## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHALONYA KYLE,** | |
| **Plaintiff,** | |
| **v.** | **Case: 1:12-cv-01572 (RMC)** |
| **DUNCAN BEDLION, SGT., MPD,** *et al.,* | |
| **Defendant.** | |

### DEFENDANTS' PARTIAL MOTION TO DISMISS THE COMPLAINT

Defendants Sergeant Bedlion ("Sgt. Bedlion"), Officer Davis, Officer Gamm, Officer Rubin, and Lieutenant Wright ("Lt. Wright") ("defendants"), by and through undersigned counsel, move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that:

A. Count III must be dismissed as to Sgt. Bedlion because plaintiff has failed to establish a distinct and plausible claim for negligence.

B. Plaintiff's negligence claims against Officers Davis, Gamm, and Rubin,  Lt. Wright, and Sgt. Bedlion must be dismissed because plaintiff fails to state a claim of negligence.

C. Plaintiff fails to make out a claim for abuse of process (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) under Count IV.

D. Count V, defamation, (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) must be dismissed because plaintiff fails to state a claim upon which relief can be granted.

E.  Officers Davis, Gamm, and Rubin are entitled to qualified immunity with respect to Count VI.

F. Count VII violation of plaintiff's procedural due process rights (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) must be dismissed because plaintiff received all of the due process to which she was entitled.

G. Count VII violation of plaintiff's substantive due process rights (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) must be dismissed because plaintiff fails to make out a claim upon which relief can be granted.

H.  All claims that the officers conspired against plaintiff must be dismissed as a matter of law under the intracorporate conspiracy doctrine.

In support of this motion, defendants rely upon the accompanying memorandum of points and authorities.  A proposed order is attached hereto.

Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

*/s/ Jonathan H. Pittman*
JONATHAN H. PITTMAN    [D.C. Bar No. 430388]
Chief, Civil Litigation Division Section III

/s/ Patricia B. Donkor
PATRICIA B. DONKOR [DC Bar No. 1000455]
Assistant Attorney General
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 727-9624
Patricia.donkor@dc.gov

Counsel for Defendants

**LOCAL RULE 7(m) CERTIFICATE**

Because Defendants' motion is dispositive, LCvR 7(m) is inapplicable.

/s/Patricia B. Donkor
Patricia B. Donkor

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHALONYA KYLE,** | |
| **Plaintiff,** | |
| **v.** | **Case: 1:12-cv-01572 (RMC)** |
| **DUNCAN BEDLION, SGT., MPD,** *et al.,* | |
| **Defendant.** | |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

### I.   BACKGROUND

Plaintiff Shalonya Kyle claims that on September 11, 2011, she was at 1818 L Street, NE, attending a birthday party.  Compl. ¶ 25.  She alleges that Sgt. Bedlion and Officer Davis came to the residence in response to a noise complaint around 9 p.m.  *Id.*  ¶27.  Officer Gamm arrived shortly thereafter.  *Id.*  ¶28.  According to plaintiff, Sgt. Bedlion got into an argument with a Darious Lewis on the porch of the residence.  *Id.*  ¶29.  Plaintiff claims that she was trying to get Darious Lewis to calm down.  *Id.*  ¶30.  The argument between Sgt. Bedlion and Darious Lewis escalated.  *Id.*  ¶¶31-35.  Plaintiff claims that Sgt. Bedlion deployed his OC spray, intentionally spraying her and Mr. Lewis.  *Id.*  ¶¶36-37.

Upon being sprayed, plaintiff claims that she and Mr. Lewis began stumbling down the steps of the porch.  Compl.  ¶41.  Sgt. Bedlion and Officer Gamm then went to arrest Mr. Lewis. The complaint alleges that Sgt. Bedlion grabbed "Ms. Lewis" [1] from behind and threw her, causing her arm to hit a hot barbeque.  *Id.*  ¶¶43-44.  Plaintiff claims that her arm was severely

---

[1]  On multiple occasions, plaintiff uses the name Ms. Lewis.  *See* Compl. ¶¶39-48.  Defendants not sure if this is a typographical error or if plaintiff intended to refer to Ms. Lewis.  For the purposes of this Motion, defendants will assume that references to Ms. Lewis were typographical errors.

burned.  *Id*.  ¶45.   At that point Officer Davis, who had been in her car running criminal background checks, came out to help "Ms. Lewis."  *Id*.  ¶47.  Sgt. Bedlion told Officer Davis to instead place "Ms. Lewis" under arrest.  *Id*.  ¶48.  Officer Davis arrested plaintiff and placed her in the back of a police car.  *Id*.  ¶49.  Plaintiff claims that Lt. Ronald Wright ordered all officers to return to the Fifth District police station.  *Id*.  ¶52.  She was taken to the police station with a large serious burn on her left arm, which was bleeding and she was suffering the effects of the OC spray.  *Id*.  ¶53.

Plaintiff claims that she was forced to wait outside of the Fifth District police station for approximately thirty minutes because the person working at the desk told the officers that she could not come into the station because she was injured.  Compl.  ¶54. Eventually, plaintiff was taken into the police station and booked.  *Id*.  ¶56.  She alleges that she was eventually taken to the hospital at approximately 1:14 am.  *Id*.  ¶58.

Plaintiff claims that Sgt. Bedlion, Davis, Gamm, and Rubin filed police reports stating that plaintiff had interfered with the arrest of Darious Lewis, had been assaultive, and only had minor scrapes.   Compl.  ¶¶58-83.  Plaintiff was charged criminally.  *Id*.  ¶ 85.  She claims that the police reports were used to build a criminal case against her.  85.  She claims that she was acquitted at trial.

Plaintiff filed the instant case on September 10, 2012, alleging the following:

1.  Count One – False arrest and imprisonment against Sgt. Bedlion, Officers Davis, Gamm, and Rubin.  Compl. ¶¶ 93-98.   Plaintiff alleges that Sgt. Bedlion knew that he did not have probable cause to arrest plaintiff and that he ordered her arrest.  *Id*.

2.  Count II- assault against Sgt. Bedlion.  Compl. ¶¶ 99-107.  Plaintiff alleges that Sgt. Bedlion recklessly deployed the OC spray on Mr. Lewis and plaintiff without giving a warning for plaintiff to get away.  *Id*.  She also claims that Sgt. Bedlion threw her into the barbeque.  *Id*.

3.  Count III – negligence against Sgt. Bedlion, Officers Davis, Gamm, and Rubin and Lieutenant Wright. Compl. ¶¶108-132.   Plaintiff alleges that Sgt. Bedlion had a duty to use reasonable care when he deployed his OC spray and he made no attempt to avoid injuring plaintiff.  *Id.*  Plaintiff further alleges that Sgt. Bedlion negligently threw plaintiff into the barbeque.  *Id.*  Plaintiff alleges that Lt. Wright knew or had a duty to investigate "Ms. Lewis's" injuries from the OC spray and being thrown to the ground but instead ordered the officers to take plaintiff to the Fifth District police station instead of the hospital.  *Id.*  She next alleges that Sgt. Bedlion and Officers Davis, Gamm and Rubin breached their duty to act reasonably to insure that reports are factual and breached their duty by swearing false reports.  *Id.*

4.  Count IV – abuse of process against Sgt. Bedlion, Officers Davis, Gamm, and Rubin. Compl. ¶¶ 133-139.  Plaintiff claims that Sgt. Bedlion ordered her arrest and wrote false reports to cover up his batter of Ms. Kyle.  *Id.*  She further claims that the other officers wrote false reports and gave false testimony against her at trial.  *Id.*  The charges against plaintiff had the intention and effect of intimidating plaintiff into not filing charges against the officers, and not pursuing her rights against Defendants until the filing of this complaint.  *Id.*

5.  Count V- defamation against Sgt. Bedlion, Officers Gamm, Davis, and Rubin.  Compl. ¶¶ 140 – 146.  Plaintiff alleges that officers defamed her by making false statements in reports and by repeating these false statements at her trial.  *Id.*

6.  Count VI – violation of 42 U.S.C. § 1983 (Fourth Amendment) against Officer Davis, Gamm, and Rubin and Sgt. Bedlion.  Compl. ¶¶ 133 – 139.  Plaintiff claims the officers violated her 4th Amendment rights by using excessive force, and falsely arresting her.  *Id.*

7.  Count VII- violation of the 42 U.S.C. §1983 (Fifth Amendment) against Sgt. Bedlion, Officers Gamm, and Rubin.  Compl. ¶¶ 156-162.   Plaintiff alleges that Sgt. Bedlion violated her substantive due process rights by throwing her into a hot barbeque.  *Id.*  Plaintiff further claims that the officers violated her due process rights by lying in police reports that were used at trial and by lying during the prosecution of plaintiff at trial.  *Id.*

The Court should dismiss the Complaint for the following reasons:

A.  Count III must be dismissed as to Sgt. Bedlion because plaintiff has failed to establish a distinct and plausible claim for negligence that is separate and apart from her claim for assault (Count II).

B.  Plaintiff's negligence claims against Officers Davis, Gamm, and Rubin,  Lt. Wright, and Sgt. Bedlion must be dismissed because plaintiff fails to state a claim of negligence.

C.  Plaintiff fails to make out a claim for abuse of process (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) under Count IV.

3

D. Count V, defamation, (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) must be dismissed because plaintiff fails to state a claim upon which relief can be granted.

E. Officers Davis, Gamm, and Rubin are entitled to qualified immunity with respect to Count VI.

F. Count VII, violation of plaintiff's procedural due process rights (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) must be dismissed because plaintiff received all of the due process in which she was entitled.

G. Count VII, violation of plaintiff's substantive due process rights (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) must be dismissed because plaintiff fails to make out a claim upon which relief can be granted.

H. All claims that the officers conspired against plaintiff must be dismissed as a matter of law under the intracorporate conspiracy doctrine.

Dismissal is required based on the arguments set forth below.

## II.   LEGAL STANDARDS

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007). In *Ashcroft v. Iqbal*, the Supreme Court set forth a "two-pronged approach" that a Court may utilize when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). While a Court generally must consider a plaintiff's factual allegations as true, the Court may first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, the basic pleading standards "demand [] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Once the Court has determined that the plaintiff has asserted "well-pleaded factual allegations," the Court "should assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.  The Court defined "plausible" as

follows:

> A claim has facial plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is liable
> for the misconduct alleged.   The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a sheer possibility that a
> defendant has acted unlawfully.   Where a complaint pleads facts that are
> merely consistent with a defendant's liability, it stops short of the line between
> possibility and plausibility of entitlement to relief.

*Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Iqbal*, 129 S. Ct.

at 1950 (internal quotation marks and citations omitted)).

**ARGUMENT**

**A. Count III must be dismissed as to Sgt. Bedlion because plaintiff has failed to
establish a distinct and plausible claim for negligence.**

Count III as to Sgt. Bedlion fails because it does not allege a negligent act; rather,

plaintiff relied upon precisely the same facts alleged to support the assault and battery claim

alleged in Count II.  To establish a negligence claim, a plaintiff must allege "the applicable

standard of care, a breach of that standard by the defendant, and a causal relationship between

the breach and the plaintiff's injury." *District of Columbia v. Price*, 759 A.2d 181, 183 (D.C.

2000).

Count III of the Complaint is captioned "Negligence."  Compl. p. 14.  This count alleges

that "Sgt. Bedlion made no effort to avoid injuring Ms. Kyle when he deployed the OC spray."

*Id*. ¶110.  Count III further states that "Ms. Kyle believes and the evidence demonstrates that Sgt.

Bedlion acted *intentionally* when he threw Ms. Kyle into the barbeque, but if it was not

intentional, it was at the very least negligent." *Id*. ¶113 (emphasis added).  "It further states that

"Sgt. Bedlion breached his duty of care by throwing Ms. Kyle into a barbeque. *Id.* ¶114.

Identically, plaintiff's assault and battery count describes the same actions as the negligent count.

Plaintiff states "it was not reasonably necessary to spray Ms. Kyle along with Darious Lewis." ¶ 102.  It further states "no reasonable officer would have thought it lawful or necessary to throw Ms. Kyle into a hot barbeque." *Id.* ¶105. "The force used by Sgt. Bedlion was far in excess of what was necessary to accomplish any legitimate police goal." ¶ 106.

Sgt. Bedlion is entitled to a dismissal of Count III, negligence, because in light of the allegations of the Complaint, plaintiff cannot allege negligence on these facts. *See Maddox v. Bano*, 422 A.2d 763 (D.C. 1980).  "The term [reasonable care] is merely a conclusory assertion, and without more the complaint does not raise a cognizable claim of negligence." *Maddox v. Bano*, 422 A.2d 763, 764 (D.C. 1980); *see also Mazza*, 18 A.3d at 791; *Kelton v. District of Columbia*, 413 A.2d 919, 922 (D.C. 1980) ("Even assuming the complaint raised an allegation of negligence, the trial court was not bound by the plaintiffs' characterization of the action.").

Although facts that give rise to a claim for assault and battery may sometimes also lend themselves to a theory of negligence, there must be a distinct element that suggests an independent breach of a duty of care beyond that of not spraying plaintiff with OC spray or pushing her into a barbeque. *See Chinn*, 839 A.2d at 707.  Such a claim must be capable of being analyzed and considered by a jury "on its own terms, apart from the intentional tort." *Id.; cf. Maddox*, 422 A.2d at 734. Plaintiff cannot "bootstrap" a negligence claim from evidence of assault and battery alone because "one may not commit a negligent assault [or battery]." *Chinn*, 839 A.2d at 710 (citation omitted); *see also, e.g., id.* at 710-11 (plaintiff asserted intentional use of excessive force by police officers and did not plead facts that presented an aspect of negligence); *Stewart-Veal v. District of Columbia*, 896 A.2d 232 (D.C. 2006) (negligence claim was based on the same conduct giving rise to intentional tort claim); *Sabir v. District of*

*Columbia*, 755 A.2d 449 (D.C. 2000) (same); *Maddox*, 422 A.2d 763 (affirming grant of summary judgment).

In *Stewart-Veal*, plaintiff asserted, *inter alia*, claims of false arrest, assault and battery, emotional infliction of mental distress, and negligence based on the actions of arresting police officers. 896 A.2d at 234.  In affirming the dismissal of the negligence claim based on the actions of the arresting officers, the court explained: Ms. Stewart-Veal's complaint reflects two approaches to her negligence claim. The first appears to be based on the actions of the arresting officers, and not on the alleged negligence of their superiors. As such, it is not separate and distinct from the false arrest claim; rather, it is intertwined with and dependent on that claim.

Conversely, in *Holder*, the plaintiff offered alternative factual scenarios to support distinct negligence and assault and battery claims: It was Holder's position that the District was liable in negligence if Holder was unarmed when Officer Walker shot him.  It was Holder's alternate position that the District was liable for assault and battery if Holder was in fact armed, but Officer Walker used excessive force in shooting him.

Here, however, there is no alternative set of facts.  Plaintiff characterizes Sgt. Bedlion's conduct as intentional and does not allege any additional facts about Sgt. Bedlion's conduct, apart from the battery allegations.  The Complaint does not assert that Sgt. Bedlion mistakenly or accidentally pushed plaintiff it alleges that Sgt. Bedlion acted "intentionally."  *See* Compl. ¶ 113. After making the conclusory assertion that Sgt. Bedlion was "negligent," the Complaint claims that Sgt. Bedlion "breached his duty of care by throwing Ms. Kyle into a barbeque." *Id*. ¶ 114. Those are essentially the same facts plaintiff alleges for her battery claim.  Even if true, which they are not, the allegations would not support a claim for negligence, which by its very nature involves acts that are accidental and not intended to result in harm.  *See Chinn*, 839 A.2d at 706

("Intent and negligence are regarded as mutually exclusive grounds for liability…. There is no such thing as a negligent battery.").  Unlike the plaintiff in *Holder*, plaintiff here offers no alternative set of facts that could give rise to a plausible claim for negligence and therefore Count III must be dismissed.

**B. Plaintiff's negligence claims against Officers Davis, Gamm, and Rubin,  Lt. Wright, and Sgt. Bedlion must be dismissed because plaintiff fails to state a claim of negligence.**

The negligence claim is deficient for additional reasons.  Under the public duty doctrine, the District has no duty to provide public services to any particular citizen.  *Allison Gas Turbine Div. of General Motors Corp.*, 642 A.2d at 843.  Rather, "the duty to provide public services is owed to the public at large and, absent a special relationship between the police and an individual, no specific legal duty exists." *Id*. at 843.   "A 'special relationship' may give rise to a "special duty" if there is: "(1) a direct contact or continuing contact between the victim and the governmental agency or official; and (2) a justifiable reliance on the part of the victim.'" *Id*.  "A request for aid is not in itself sufficient to create a special duty."  *Warren*, 444 A.2d 1, 5 (D.C. 1981).

> Official police personnel and the government employing them are not generally liable to victims of criminal acts for failure to provide adequate police protection. A publicly maintained police force constitutes a basic governmental service provided to benefit the community at large by promoting public peace, safety and good order… .  By becoming a police officer, an officer does not insulate himself from any of the basic duties which everyone owes to other people, but neither does he assume any greater obligation to others individually.   The only additional duty undertaken by accepting employment as a police officer is the duty owed to the public at large.

*Warren v. District of Columbia*, 444 A.2d at 5-6, and 8.  Dereliction in the performance of police duties may be redressed only in the context of a public prosecution and not in a private suit for

money damages.  *Id.* at 6.

Plaintiff 's alleges that Sgt. Bedlion and Officers Davis, Gamm and Rubin breached their duty to insure that the reports they make are factual.  Compl. ¶ 130.  Writing factually accurate reports is not a duty that is owed to plaintiff.  This is a work responsibility.  It is not done correctly, plaintiff is not entitled to damages.  *See Warren v. District of Columbia*, 444 A.2d at 6. This is a duty to the public at large, not plaintiff.

Next, swearing false reports is inherently an intentional act.  "The term [reasonable care] is merely a conclusory assertion, and without more the complaint does not raise a cognizable claim of negligence." *Maddox v. Bano*, 422 A.2d 763, 764 (D.C. 1980); *see also Mazza*, 18 A.3d at 791; *Kelton v. District of Columbia*, 413 A.2d 919, 922 (D.C. 1980) ("Even assuming the complaint raised an allegation of negligence, the trial court was not bound by the plaintiffs' characterization of the action.").  A person does not accidently make falsify a report.  Plaintiff's description of intentional behavior cannot survive under a negligence cause of action.

Plaintiff also fails to make out a claim of negligence against Lieutenant Wright.  While a Court generally must consider a plaintiff's factual allegations as true, the Court may first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  *Ashcroft*, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Thus, the basic pleading standards "demand [] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Plaintiff claims that Lt. Wright knew or had a duty to investigate if "Ms. Lewis" had injuries from the OC spray and her being thrown to the ground.  Compl. ¶121.  Despite this, he ordered all officers to return to the Fifth District Police Station.  *Id.* ¶122.  She also contends that

Lt. Wright had a duty to order Ms. Kyle to be brought to the hospital.  *Id.* ¶ 123.  The facts do not support plaintiff's conclusion that Lt. Wright knew nor had a duty to investigate if Ms. Lewis had injuries from the OC spray and her being thrown to the ground.  In fact, the only facts plaintiff alleges regarding Lt. Wright in the "Statement of Facts" is that he ordered the officers to take plaintiff to the Fifth District.  Compl.  ¶52.  Plaintiff does not allege that Lt. Wright was on the scene, physically examined plaintiff or ever saw plaintiff at all.  *See* Compl. generally.  Plaintiff's conclusory reference to Lt. Wright is wholly insufficient to maintain a negligence cause of action against him.  For these reasons and the reasons stated above, plaintiff's negligence claim must be dismissed in its entirety against all defendants.

## C. Plaintiff fails to make out a claim for abuse of process (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) under Count IV.

Plaintiff's abuse of process claim fails.  Under District of Columbia law, abuse of process occurs when "process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do."  *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C.1980) (quoting *Jacobson v. Thrifty Paper Boxes, Inc.*, 230 A.2d 710, 711 (D.C.1967)).

"As the Restatement of Torts makes clear, the fact that a person acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process."  *Scott v. District of Columbia*, 101 F.3d 748, 755-756 (D.C. Cir. 1996) (citing Restatement (Second) of Torts § 682 cmt. b (1977)).  "There is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."  *Id.* "Thus, the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely

because the instigator dislikes the accused and enjoys doing him harm." *Id*.  "For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended." *Id*.  "The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to  pay a different debt or to take some other action or refrain from it." *Id*.

The instant case is identical to *Scott v. District of Columbia*.  There, an off-duty police officer was arrested after officers discovered that he was involved in a car accident where he struck four parked vehicles. *Scott,* 101 F.3d at 751.  Officers arrested him, charging him with DUI. *Id*.  Plaintiff was acquitted at trial. *Id*.  Plaintiff brought an abuse of process claim against the District and the officers, amongst several other claims. *Id* at 755-756.  The court granted the defendants' Motion for Judgment as a Matter of Law on the basis that no reasonable jury could have concluded that the defendants committed abuse of process. *Id*.  The Court opined that the officers instituted the criminal charge for precisely the purpose for which it was intended: establishing that Scott was guilty of a criminal offense. *Id*.  The Court further reasoned that Scott does not contend that the filing of criminal charges was intended to pressure him into taking any action or prevent him from taking action, or to achieve any other collateral purpose. *Id*.

Here, plaintiff has also failed to establish the essential elements of abuse of process. Plaintiff argues that Officers Davis, Gamm, Rubin, and Sgt. Bedlion committed abuse of process because they made false reports in order to cover up Sgt. Bedlion's battery and to intimidate her into not filing charges against the officers. Compl. ¶¶ 134, 136.  However, plaintiff's suggestion that the officers had ulterior motives when they pursued criminal charges against her is irrelevant. *See Scott,* 101 F.3d at 755-756.  From the face of the complaint, it is clear that the

officers instituted criminal charges against plaintiff and testified in court for the purpose of obtaining a criminal conviction. The officers used the process for the purpose in which it was intended. Even taking the facts in the light most favorable to plaintiff, there is nothing to suggest that the officers used the criminal justice system to coerce plaintiff to do anything. She does not allege that any of the officers attempted to extort her by contacting her outside of the context of the criminal proceeding. *See* Compl. generally. She merely claims that they pursued charges against her to which she disagreed. This is not abuse of process under the established law. Plaintiff has not pled a viable abuse of process claim against Sgt. Bedlion, Officers Davis, Gamm, and Rubin, thus this cause of action must be dismissed.

**D. Count V, defamation, (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) must be dismissed because plaintiff fails to state a claim upon which relief can be granted.**

Plaintiff seeks damages for defamation against Officers Davis, Gamm, and Rubin and Sgt. Bedlion for the alleged false statements in their police reports and because of the false statements they allegedly made at trial. Compl. ¶¶ 140-146. This claim must be denied summarily against each of the officers.

The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law *Briscoe v. Lahue*, 460 U.S. 325, 330-331 (U.S. 1983). In damages suits against witnesses, "the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *Id*. A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. *Id*. First, witnesses might be reluctant to come forward to testify. *Id*. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability. *Id*. A

witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence. *Id*. Thus, Officers Gamm, Davis, and Rubin and Sgt. Bedlion, just like any other witness, are immune from civil liability for the statements they allegedly made in court.

Likewise, the officers are entitled to immunity over the statements in the officers' police reports. Misstatements of fact as well as opinion are protected under the fair reporting privilege. *Phillips v. Evening Star Newspaper Co.,* 424 A.2d 78, 88 (D.C. 1980). The privilege has been held applicable to reports of proceedings before any court, or agency of the court (e.g. a grand jury returning an indictment), reports of any other proceedings, judicial in character, which take place before administrative, executive or legislative bodies (e.g. an extradition hearing before the governor), and to reports of action by legislative bodies and reports of bodies which are by law authorized to perform public duties (e.g. bar association disciplinary proceedings), as well as reports of any official proceeding or action taken by any officer or agency of government. *Id*. Here, the police reports were prepared for and used in the criminal proceeding against plaintiff. The alleged misstated facts and opinions by Officers Gamm, Davis, and Rubin and Sgt. Bedlion therefore were protected under the fair reporting privilege. For the foregoing reasons, plaintiff's defamation claim must be dismissed in its entirety.

### E.  Officers Davis, Gamm, and Rubin are entitled to qualified immunity with respect to Count VI.

Officers Davis, Gamm, and Rubin are entitled to qualified immunity with respect to Count VI, Violation of 42 U.S.C. §1983. It is well settled that government officials enjoy a qualified immunity from constitutional and statutory claims against them. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002). As articulated

by the Supreme Court in *Saucier*, a government official cannot be held personally liable for conduct that he would not have reasonably known was unconstitutional.  *Saucier*, 533 U.S. at 2002.  The Court explained that "'the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Specifically, the Supreme Court emphasized that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.*  As such, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

The Supreme Court has not applied a rigid standard for determining whether a right is "clearly established."  Instead, the Court suggests that such a categorical rule is not needed. *Wilson*, 526 U.S. at 615-16; *United States v. Lanier*, 520 U.S. 259, 269 (1997).  In *Lanier* the Court explained:

> Although the Sixth Circuit was concerned, and rightly so, that disparate decisions in various Circuits might leave the law insufficiently certain even on a point widely considered, such a circumstance may be taken into account in deciding whether the warning is fair enough, without any need for a categorical rule that decisions of the Courts of Appeals and other courts are inadequate as a matter of law to prove it.

*Lanier*, 520 U.S. at 269.

Federal courts have granted qualified immunity to police officers in cases where the officer was listed as the arresting officer, but there was little or no evidence that the officer had either made the arrest or otherwise violated the plaintiff's constitutional rights.  *See Fernandors*

*v. District of Columbia*, 382 F. Supp. 2d 63, 72-73 (D.D.C. 2005); *Bennett v. Schroeder,* 99 Fed. Appx. 707, 713-14 (6th Cir. filed May 27, 2004); *see also Montiel v. City of Los Angeles,* 2 F.3d 335,343 (9th Cir. 1993).

In *Fernandors,* the defendant officer was involved in handcuffing the arrestee/plaintiff and was listed as the arresting officer on the PD-163 form. *Fernandors,* 382 F. Supp. 2d at 72. The court held, however, that the officer was entitled to qualified immunity against an unlawful arrest claim because there was no evidence suggesting that the officer had made the determination to arrest the plaintiff. *Id.* at 73. Other federal circuit courts have followed this logic. In *Bennett,* the 6th Circuit Court of Appeals determined that there was no substantive evidence that the defendant officer had been involved in the plaintiff's arrest. *Bennett,* 99 Fed. Appx. at 713-14. Although the officer was listed as arresting officer, the court held this insufficient to defeat a motion for summary judgment for the defendant. *Id.* Finally, in *Montiel,* the defendant officer was listed as arresting officer on a property receipt admitted into evidence. *Montiel,* 2 F.3d at 343. However, the receipt had been written by another police officer and the defendant officer testified that she did not personally arrest the plaintiff. *Id.* The court held that "no legally sufficient basis" existed to find that the defendant officer had arrested the plaintiff, and affirmed judgment as a matter of law for the defendant. *Id.*

In the present case, taking plaintiff's allegations as true, plaintiff alleges that Sgt. Bedlion ordered that plaintiff be arrested. She does not allege that Officer Davis was involved in the decision making process at all. Instead, she states that Officer Davis was initially in her cruiser running background checks at the time the decision was made for plaintiff to be arrested. With respect to Officers Gamm and Rubin, plaintiff does not plead that these officers had any

15

involvement in her arrest whatsoever. For these reasons, Officers Gamm, Rubin, and Davis are entitled to qualified immunity.

**F. Count VII violation of plaintiff's procedural due process rights (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) must be dismissed because plaintiff received all of the due process in which she was entitled.**

Plaintiff claims that Sgt. Bedlion, Officers Davis, Gamm, and Rubin violated her procedural due process rights. Compl. ¶ 147-155. Specifically, plaintiff contends that she was denied the procedural due process right to have police officers who are participating in a prosecution about her not lie in statements used against her in her prosecution. *Id*. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Kelly v. Parents United*, 641 A.2d 159, 167 (D.C. 1994). Plaintiff's due process right guarantees her the ability to testify or present evidence in her favor. Plaintiff's interpretation that due process entitles her to have officers testify a particular manner is flawed.

Here, plaintiff received all of the due process in which she was entitled. Plaintiff was heard at trial. She states that the officers testified and offered false testimony. However, plaintiff clearly was able to combat that testimony with her own evidence. Plaintiff admits that she had a trial. She was clearly was successful in creating a reasonable doubt in her guilt. According to plaintiff, the charges against her were dismissed. Plaintiff's acquittal is sound proof that she had an opportunity to be heard during the criminal proceeding. Thus, plaintiff received the procedural process she was due.

**G. Count VII violation of plaintiff's substantive due process rights (against Sgt. Bedlion, Officers Davis, Gamm, and Rubin) must be dismissed because plaintiff fails to make out a claim upon which relief can be granted.**

Plaintiff's claim that her substantive due process rights were violated also fails. Plaintiff argues that Sgt. Bedlion violated her substantive due process rights by using unnecessary force

16

when he threw her into a hot barbeque.  Compl. ¶157.  The Supreme Court, however, in the seminal case of *Graham v. Connor*, 490 U.S. 386, 394 (1989), held that claims involving allegations that the police used excessive force in the course of an arrest or investigatory stop are to be analyzed under the protections of the Fourth Amendment, not the Fifth Amendment. Therefore, under *Graham v. Connor*, plaintiff's Fifth Amendment claim fails as a matter of law.

> **H.  All claims that the officers conspired against plaintiff must be dismissed as a matter of law under the intracorporate conspiracy doctrine.**

Throughout her complaint, plaintiff generally pleads that "to the extent any officer named in this complaint did not individually commit each act alleged in this cause of action; the officers are liable under civil conspiracy for the acts alleged herein."  Compl. ¶¶ 139 (Count IV), 146 (Count V), and 155 (Count VI).  Under the "intracorporate conspiracy doctrine" the District of Columbia employees acting within the scope of their employment cannot be deemed to have conspired with one another.  *See Executive Sandwich Shoppe, Inc. v. Carr Realty Corp*., 749 A.2d 724 (D.C. 2000); *see also Tabb v. District of Columbia*, 477 F. Supp 2d 185, 190 (D.D.C. 2007).  This rule flows logically from the principle that a municipality and its employees, like a corporation, are one single legal entity. *Dickerson v. Alachua Court Comm*., 200 F.3d 761, 767 (11th Cir. 2007).  Plaintiff admits that she encountered the officers after they responded to a noise complaint.  She also contends that at all times relevant, the officers were employed with the Metropolitan Police Department.  Compl. ¶¶ 11-18.  Nothing in the complaint suggests that the officers were not acting within the scope of their employment at the relevant period. Consequently plaintiff cannot seek liability from any of the officers under a conspiracy theory.

## III.    CONCLUSION

For the reasons set forth above, the Court should grant the defendants' Motion and:

1. Dismiss Count III in its entirety against all named defendants

2.  Dismiss Count IV in its entirety against all named defendants.

3. Dismiss Count V in its entirety against all named defendants.

4. Dismiss Count VI as to Officers Davis, Gamm and Rubin.

5. Dismiss Count VII in its entirety against all named defendants.

6. Reject any claim of civil conspiracy liability.

<div style="margin-left:auto">

Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

*/s/ Jonathan H. Pittman*
JONATHAN H. PITTMAN    [D.C. Bar No. 430388]
Chief, Civil Litigation Division Section III


/s/ Patricia B. Donkor
PATRICIA B. DONKOR [DC Bar No. 1000455]
Assistant Attorney General
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 727-9624

Counsel for Defendants

</div>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHALONYA KYLE,

                        Plaintiff,

    v.

DUNCAN BEDLION, SGT., MPD, *et al.*,

                        Defendant.

**Case: 1:12-cv-01572 (RMC)**

**ORDER**

Upon consideration of the Defendants' Partial Motion to Dismiss, the response thereto, if any, and the record herein, it is by the Court this _____ day of _____, 201_,

ORDERED:    that the Motion is GRANTED; and it is

FURTHER ORDERED:    that Counts III, IV, V, and VII are dismissed in their entirety against all named defendants; and it is

FURTHER ORDERED:  that Count VI as to Officers Davis, Gamm and Rubin is dismissed; and it is

FURTHER ORDERED: that plaintiff does not have a cause of action on the basis of civil liability.

_____
JUDGE ROSEMARY COLLYER
U.S. DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA

1