## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHALONYA KYLE,                                    )
2730 Langston Pl. SE                              )
Washington, DC  20020,                            ) Civil Action No. 1:12-cv-1572 (RMC)
                                                  )
                                                  )
PLAINTIFF                                         )
        vs.                                       )
                                                  )
                                                  ) **FIRST AMMENDED COMPLAINT**
SGT. DUNCAN BEDLION (#S969),                      )
*in his individual capacity*,                     ) **JURY TRIAL DEMANDED**
Metropolitan Police Department Fifth District     )
1805 Bladensburg Road, NE                         )
Washington, DC 20002,                             )
                                                  )
OFC. DIANE DAVIS (#2436),                         )
*in her individual capacity*                      )
Metropolitan Police Department Fifth District     )
1805 Bladensburg Road, NE                         )
Washington, DC 20002,                             )
                                                  )
OFC. ANDREW GAMM (#7686),                         )
*in his individual capacity*                      )
Metropolitan Police Department Fifth District     )
1805 Bladensburg Road, NE                         )
Washington, DC 20002                              )
                                                  )
OFC. BENJAMIN RUBIN (#8055),                      )
*in his individual capacity*                      )
Metropolitan Police Department Fifth District     )
1805 Bladensburg Road, NE                         )
Washington, DC 20002,                             )
                                                  )
LT. RONALD WRIGHT,                                )
*in his individual capacity*                      )
Metropolitan Police Department Fifth District     )
1805 Bladensburg Road, NE                         )
Washington, DC  20002,                            )
                                                  )
DEFENDANTS                                        )
_____              )

## INTRODUCTION

1. Shalonya Kyle (hereinafter "Ms. Kyle") brings this action for violation of her constitutional rights, false arrest, assault and battery and defamation.

2. Ms. Kyle was present when defendants chose to arrest one Darious Lewis.

3. Defendant Sgt. Duncan Bedlion pepper sprayed Ms. Kyle and Darious Lewis because Darious Lewis called Sgt. Bedlion a "cracker."

4. Sgt. Bedlion, in making the arrest of Darious Lewis, unlawfully and without justification threw Ms. Kyle off of the steps of a porch into a barbeque that was extremely hot.

5. Sgt. Bedlion then, without any legal justification, ordered Defendant Diane Davis to arrest Ms. Kyle.

6. The Defendants falsely accused Ms. Kyle of two counts of assault on a police officer and one count of "obstructing justice" in an attempt to cover up their own misconduct.

7. Officers Davis, Gamm and Rubin, Sgt. Bedlion, and Lt. Wright (collectively hereinafter "the officers") worked together to wrongfully prosecute and defame Ms. Kyle by coordinating false statements such that Ms. Kyle would be charged with a crime that officers knew she did not commit orhad no reason to believe that Ms. Kyle committed.

8. At a trial on April 25, 2012, Ms. Kyle was acquitted of all charges.

9. Ms. Kyle seeks damages for the harm done to her by the officers and Lt. Wright.

10. Ms. Kyle also seeks costs of this suit, attorney's fees and costs.

## PARTIES

11. Ms. Kyle is an individual who lives, and at all times relevant to the Complaint, lived, in the District of Columbia.

12. Ms. Kyle is approximately 5 feet 2 inches tall.

13. At all times relevant to this action, Defendant Duncan Bedlion was a Sergeant employed by the District of Columbia Metropolitan Police Department.

14. Sgt. Bedlion is approximately 5 feet 9 inches tall, and weighs approximately 215 pounds.

15. At all times relevant to this action, Defendant Andrew Gamm was an officer employed by the District of Columbia Metropolitan Police Department.

16. Defendant Ofc. Gamm is aproximately 5 feet 8 inches tall, and weighs 210 pounds.

17. At all times relevant to this action, Defendants Benjamin Rubin and Diane Davis were officers employed by the District of Columbia Metropolitan Police Department.

18. At all times relevant to this action, Defendant Ronald Wright was a Lieutenant employed by the District of Columbia Metropolitan Police Department.

19. Throughout this complaint, all defendants will be referred to collectively as "Defendants."

## JURISDICTION AND VENUE

20. At all times relevant to this action, Ms. Kyle resided in the District of Columbia.

21. All acts and omissions relevant to this action occurred in the District of Columbia.

22. This action arises under 42 U.S.C. § 1983 and the District of Columbia common law.

23. This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 1331 and § 1367(a).

24. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to this action occurred in the District of Columbia.

## STATEMENT OF FACTS

25. On September 11, 2011, Ms. Kyle was attending a birthday party for Danita Lewis at the house of Ms. Lewis's husband, Eugene Harper, at 1818 L St. NE (hereinafter "the residence").

26. There was alcohol at the party, but Ms. Kyle did not drink any alcohol that night.

27. Sgt. Bedlion and Ofc. Davis came to the residence in response to a noise complaint at approximately 9pm.

28. Ofc. Gamm arrived at the residence shortly thereafter to assist the other officers.

29. Sgt. Bedlion got into an argument with Darious Lewis as Darious Lewis was walking out onto the porch of the residence.

30. Ms. Kyle was attempting to calm Darious Lewis down and get him to cooperate with the officers.

31. When Darious Lewis arrived on the porch, Ms. Kyle was facing Darious Lewis, and had placed her hands on Darious Lewis' face to attempt to get him to stop arguing with Sgt. Bedlion.

32. Sgt. Bedlion was standing in front of the porch steps, facing Darious Lewis, and was slightly off-center to the back of Ms. Kyle.

33. Sgt. Bedlion and Darious Lewis continued to argue.

34. Darious Lewis called Sgt. Bedlion a "motherfucking cracker."

35. Upon hearing that insult, Sgt. Bedlion lost his temper and deployed OC spray on Darious Lews and Ms. Kyle.

36. Sgt. Bedlion did not target the spray only at Darious Lewis, but rather intentionally sprayed both Ms. Kyle and Darious Lewis.

37. Sgt. Bedlion's intent was demonstrated by swinging his arm up, down and around while spraying the OC spray such as to hit both Ms. Kyle and Darious Lewis in the eyes and nose, despite the fact that Darious Lewis was 5 feet 10 inches tall, and Ms. Kyle was only 5 feet 2 inches tall.

38. In the alternative, if Sgt. Bedlion did not intentionally spray Ms. Lewis, he was negligent in deploying the spray in the first place.

39. In the alternative, Sgt. Bedlion was negligent in not taking care to avoid hitting Ms. Kyle with OC spray.

40. Prior to Sgt. Bedlion's decision to use OC spray, Ms. Kyle did not hear any instructions from any officers directed at Ms. Kyle, nor any warnings that spray would be deployed.

41. Recoiling from the pain of the OC spray, Ms. Kyle and Darious Lewis began stumbling down the steps of the porch.

42. Sgt. Bedlion and Ofc. Gamm decided to arrest Darious Lewis.

43. Sgt. Bedlion grabbed Ms. Kyle from behind and threw her to the left, into a barbeque that was extremely hot.

44. Ms. Kyle's left arm hit the barbeque because of Sgt. Bedlion's battery, and after impacting the barbeque she tumbled to the ground.

45. Ms. Kyle's arm was severely burned by the barbeque.

46. After Sgt. Bedlion pushed Ms. Kyle into the barbeque, Sgt. Bedlion and Ofc. Gamm placed Darious Lewis under arrest.

47. Officer Davis, who was in her car running criminal background checks for the last several minutes, returned from her car and helped Ms. Kyle up and began to escort her inside.

48. Sgt. Bedlion told Officer Davis not to bring Ms. Kyle into the house, but rather to place her under arrest.

49. Officer Davis arrested Ms. Kyle and placed her in the back of the police car.

50. At no point during the evening did Ms. Kyle disobey any orders from any police officers.

51. At no point during the evening did Ms. Kyle obstruct the work of the police officers, rather, she was attempting to help the officers by trying to calm Darious Lewis and defuse the situation.

52. Defendant Lt. Ronald Wright ordered all officers to return to the Fifth District police station.

53. Ms. Kyle was then brought to the Fifth District police station, despite having a large, serious burn on her left arm that was bleeding and despite suffering from the effects of OC spray.

54. When Ms. Kyle arrived at the Fifth District police station, the person working at the desk told the officers that she could not be brought into the station because she was suffering from obvious injuries.

55. Ms. Kyle was then forced to wait outside the Fifth District police station for approximately thirty minutes.

56. Ms. Kyle was then brought back into the Fifth District police station, booked and placed in a cell.

57. Ms. Kyle was brought to the hospital at approximately 1:14am on Sept. 12, 2011.

58. This was approximately 4 hours after Officer Bedlion OC sprayed her and threw her into the hot barbeque.

59. Sgt. Bedlion filed a PD-901 (Use of Force Incident Report) dated "07/09/2011" but which was actually written and filed at a later date, with IS number 11-001815 which accused Ms. Kyle of jumping on Sgt. Bedlion's back.

60. Ms. Kyle did not attack Sgt. Bedlion nor jump on his back.

61. The report accused Ms. Kyle of pulling Ofc. Gamm's arm in an attempt to interfere with the officers' arrest of Darious Lewis.

62. Ms. Kyle did not pull officer Gamm's arm nor attempt to interfere with any officers' attempt to arrest anyone.

63. The report mentioned Ms. Kyle's "minor scrapes" from her fall, but did not mention her severe burns.

64. Sgt. Bedlion filed an identical narrative in a PD-901 with IS number 11-002314 on 9/11/2012.

65. Sgt. Bedlion filed a PD-901f (Supplemental Use of Force Incident Report) with IS number 11-002314 on 9/12/11 which accused Ms. Kyle of actively resisting arrest and of being "assaultive (physical injury)" and using a weapon.

66. Ms. Kyle did not resist arrest, did not assault anyone, and did not have or employ any weapons.

8

67. The PD-901f noted that Ms. Kyle suffered "abrasions" from Officer Bedlion's force, but did not note her burns.

68. The PD-901f has a box where noting burns would be appropriate.

69. Ofc. Davis filed a PD-119 on October 10, 2011 which stated that she observed Ms. Kyle grabbing Sgt. Bedlion from the rear.

70. Ms. Kyle did not grab Sgt. Bedlion.

71. Ofc. Davis did not observe Ms. Kyle grab Sgt. Bedlion.

72. Ofc. Gamm filed a PD-119 on September 28 stating that Ms. Kyle interfered with the arrest of Darious Lewis.

73. Ofc. Gamm filed a UFIR which stated that Ms. Kyle tried to grab Ofc. Gamm's hand to prevent him from arresting Darious Lewis.

74. Ofc. Gamm filed a separate UFIR on September 11, 2011 which contained the same allegation.

75. Ms. Kyle did not attempt to interfere with Darious Lewis' arrest and did not attempt to grab Ofc. Gamm's hand.

76. Ms. Kyle did not interfere with the officers at any point in the night, rather, she was attempting to help them.

77. Ofc. Rubin filed a PD-313 (Arrestee's injury/illness report) which, in the field for "Arrestee's Account of incident" wrote "Fell over while holding boyfriend that

was being arrested, assaulted officers and was pushed to the ground to be handcuffed."

78. Ms. Kyle never made the above statement.

79. Ms Kyle did not fall over, Ms. Kyle was pushed into a barbeque pit by Sgt. Bedlion.

80. Ms. Kyle did not assault any officers.

81. Ms. Kyle was not pushed to the ground to be handcuffed. Rather, she was on the ground when Ofc. Davis helped her up and began to escort her inside the house.

82. Ms. Kyle was arrested and handcuffed only when Sgt. Bedlion instructed Ofc. Davis to arrest her.

83. Ms. Kyle was not pushed to the ground to be arrested, rather, she cooperated fully with the arrest.

84. Ofc. Rubin wrote in his official report section of the PD-313 that Ms. Kyle was taken to the ground by officers after she pushed one officer and jumped on the back of another officer.

85. Ms. Kyle was not taken to the ground to be arrested, rather, she was pushed into a barbeque and fell on the ground when officers were attempting to accomplish the arrest of Darious Lewis. She did not push any officers nor did she jump on the back of any officers.

86. Officer Rubin swore to the court in an undated statement that Ms. Kyle jumped on Sgt. Bedlion's back and that she grabbed Officer Gamm's hand to pull it away while Officer Gamm was attempting to arrest Darious Lewis.

87. Neither of the events described in the previous paragraph occurred.

88. The police reports herein listed were used to build a criminal case against Ms. Kyle.

89. Ms. Kyle was ultimately acquitted at trial of all charges.

90. At no point did any officers have probable cause to pursue the prosecution of Ms. Kyle.

91. The prosecution of Ms. Kyle caused her serious emotional distress, and large amounts of time and effort in fighting the charges.

92. On information and belief, Sgt. Bedlion and Officers Gamm, Rubin and Davis conspired to build a criminal case against Ms. Kyle that they knew was not in accord with facts, or with a reckless indifference to whether or not Ms. Kyle had committed a crime.

93. On information and belief, the purpose of the conspiracy was to cover up wrongdoing by the officers as described elsewhere in this complaint, to avoid responsibility for said wrongdoing, and in retaliation and anger directed at Ms. Kyle and Darious Lewis for Darious Lewis calling Sgt. Bedlion a "motherfucking cracker."

94. On information and belief, Sgt. Bedlion and Officers Gamm, Rubin and Davis participated in this conspiracy by working together to falsify their stories between the time of the incident and the time of the false reports.

95. Sgt. Bedlion and Officers Gamm, Rubin and Davis took affirmative actions to further the conspiracy when they wrote reports falsely implicating Ms. Kyle in criminal activity. They again took affirmative acts to further the conspiracy when they testified in Ms. Kyle's criminal trial.

## FIRST CAUSE OF ACTION: FALSE ARREST / FALSE IMPRISONMENT

### (Defendants Sgt. Bedlion, Officers Davis, Gamm, and Rubin)

96. Ms. Kyle realleges and incorporates herein by reference all the allegations set forth in this complaint.

97. Sgt. Bedlion knew that Ms. Kyle's behavior did not meet the legal definition of any crime.

98. Sgt. Bedlion ordered the arrest of Ms. Kyle.

99. The officers did not have probable cause to arrest Ms. Kyle.

100. Sgt. Bedlion's order to arrest Ms. Kyle was not motivated by a good-faith belief that Ms. Kyle committed a crime, but rather by a motivation to cover-up the crime of battery committed by Sgt. Bedlion when he threw Ms. Kyle into the barbeque, or by his anger at being called a "cracker" by Ms. Kyle's boyfriend.

101. Sgt. Bedlion's illegal order to arrest, and the officer's participation in that illegal arrest, caused Ms. Kyle serious harm, including but not limited to her being imprisoned against her will, booked, being saddled with an arrest record, and being forced to fight charges for which she was not guilty.

## SECOND CAUSE OF ACTION: ASSAULT AND BATTERY

### (Defendant Sgt. Bedlion)

102. Ms. Kyle realleges and incorporates herein by reference all the allegations set forth in this complaint.

103. Sgt. Bedlion recklessly deployed OC spray on Darious Lewis and Ms. Kyle without giving a warning for Ms. Kyle to move away from Mr. Lewis nor without ensuring that his warnings to Darious Lewis were audible to Ms. Kyle.

104. It was not reasonably necessary to deploy OC spray in that situation.

105. It was not reasonably necessary to spray Ms. Kyle along with Darious Lewis.

106. While Ms. Kyle was recoiling from the OC spray, Sgt. Bedlion grabbed Ms. Kyle from behind and threw her into a barbeque.

107. Ms. Kyle's impact with the barbeque caused her to receive second-degree burns on her arm, and her subsequent tumble to the ground caused scrapes to her body.

108. No reasonable officer would have thought it lawful or necessary to throw Ms. Kyle into a hot barbeque.

109. The force used by Sgt. Bedlion was far in excess of what was necessary to accomplish any legitimate police goal.

110. Ms. Kyle was not attempting to evade or threaten police or anyone else.

### THIRD CAUSE OF ACTION: NEGLIGENCE

### (Defendants: Sgt. Bedlion, Officers Davis, Gamm, and Rubin, and Lt. Wright)

111. Plaintiff realleges and incorporates herein by reference all the allegations set forth in this complaint.

112. If Sgt. Bedlion did not intentionally deploy OC spray against Ms. Kyle, he deployed it against Darious Lewis in a negligent fashion by failing to take reasonable care to avoid injury to bystanders, including Ms. Kyle.

113. Sgt. Bedlion made no effort to avoid injuring Ms. Kyle when he deployed the OC spray.

114. Sgt. Bedlion breached the applicable standard of care by failing to issue a warning, let alone a warning followed by a reasonable time to comply; failing to attempt to verbally defuse the situation; and deploying OC spray under conditions where it is likely to affect innocent bystanders.

115. Sgt. Bedlion's breach of his duty to use reasonable care caused pain and injury to Ms. Kyle.

116.    If Sgt. Bedlion did not intentionally throw Ms. Kyle into the hot barbeque, he unintentionally knocked her into the barbeque while attempting to arrest Darious Lewis.

117.    Sgt. Bedlion acted negligently by failing to exercise reasonable care in arresting Darious Lewis.

118. The barbeque was smoking and was an open and obvious danger.

119.    Sgt. Bedlion failed to ask Ms. Kyle to step aside, and knocked her over without regard to where she would land.

120. This breach caused Ms. Kyle serious injury.

121. The applicable standard of care requires police to transport injured arrestees to the hospital rather than the police station.

122. As evidence of this standard, District of Columbia regulations require police to take arrestees to the hospital rather than to the police station when they are injured.

123. All MPD officers, sergeants, and lieutenants know or should know about the existence of this regulation.

124. Any reasonable officer would take an arrestee who had serious burns from a barbeque and injury from pepper spray directly to the hospital rather than to the police station.

125. Lt. Wright knew or had a duty to investigate if Ms. Kyle had injuries from the OC spray and her being thrown to the ground.

126. Lt. Wright ordered all officers to return to the Fifth District police station despite Ms. Kyle's injuries.

127. Lt. Wright had a duty to order Ms. Kyle to be brought to the hospital due to her serious injuries.

128. The delay in taking Ms. Kyle to the hospital caused her serious pain and suffering and aggravated her injuries.

129. Ms. Kyle would have gone to the hospital herself had the police not removed her freedom of movement by arresting her.

130. Placing Ms. Kyle under arrest restricted her freedom of movement and placed her in a special relationship with the officers who had her in custody. A duty for the police to take her to the hospital for necessary medical care arose out of this relationship.

131. The officers violated their duty to Ms. Kyle when they took her to the police station rather than to the hospital to treat the wounds that the police officers inflicted upon Ms. Kyle.

132. The officers continued to breach this duty when they kept her at the Fifth District for hours rather than taking her to the hospital.

133. This breach caused Ms. Kyle to experience far more pain that she otherwise would have from her wound.

134. Police have a duty to act reasonably to insure that the reports they make are factual.

135. Sgt. Bedlion and Officers Davis, Gamm and Rubin breached this duty by making false representations of fact in their reports.

136. If the statements which Sgt. Bedlion and Officers Davis, Gamm and Rubin wrote in their reports were not known to them to be false, the statements were made without the officers first taking adequate steps to ensure the veracity of the statements.

137. These false reports caused Ms. Kyle injury in that she was forced to respond to charges of a crime she did not commit.

## FOURTH CAUSE OF ACTION: ABUSE OF PROCESS

### (Defendants: Sgt. Bedlion, Officers Davis, Gamm, and Rubin)

138. Ms. Kyle realleges and incorporates herein by reference all the allegations set forth in this complaint.

139. Sgt. Bedlion ordered the arrest of Ms. Kyle and wrote false reports in order to cover up his own wrongdoing in battering Ms. Kyle.

140. Sgt. Bedlion wrote false reports and induced charges to be filed against Ms. Kyle in order to intimidate her from asserting her rights against the defendants.

17

141. The other officers conspired to further the abuse of process against Ms. Kyle by writing false reports and testifying against her at trial.

142. The charges against Ms. Kyle had the intention and effect of intimidating Ms. Kyle into not filing charges against the officers, and into not pursuing her rights against Defendants until the filing of this complaint.

143. The charges of assault and obstructing justice against Ms. Kyle were an attempt to make it seem like Sgt. Bedlion was justified in his use of force against Ms. Kyle.

144. Sgt. Bedlion wrote the false reports and induced the prosecution against Ms. Kyle for the purpose of avoiding discipline or other adverse action against him stemming from his use of force against Ms. Kyle.

145. The use of criminal process to avoid responsibility for civil wrongs is an attempt to use the process to obtain an end without the regular purview of the process.

146. Sgt. Bedlion used process to achieve a result not legally obtainable from criminal process: to intimidate Ms. Kyle and to avoid being punished for his own unlawful actions.

147. The charges against Ms. Kyle were not made in good faith.

148.     To the extent that any officer named in this complaint did not individually commit each act alleged in this cause of action, the officers are liable under civil conspiracy for the acts alleged herein.

**FIFTH CAUSE OF ACTION: DEFAMATION**

**(Defendants: Sgt. Bedlion, Officers Davis, Gamm, and Rubin)**

149. Ms. Kyle realleges and incorporates herein by reference all the allegations set forth in this complaint.

150. The officers made numerous false statements in reports as described elsewhere in this complaint.

151. The officers accused Ms. Kyle of crimes she did not commit.

152. A false accusation of a crime is defamation *per se*.

153. The officers repeated these accusations and false statements at her trial, and made new false statements which tended to impinge the character of Ms. Kyle.

154. These false statements were made to third parties.

155. The officers acted with express malice.

156. To the extent that any defendant named in this complaint did not individually commit each act alleged in this cause of action, the defendants are liable under civil conspiracy for the acts alleged herein.

157. These false statements harmed Ms. Kyle.

**SIXTH CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 1983 (FOURTH AMENDMENT)**

**(Defendants: Sgt. Bedlion, Officers Davis, Gamm, and Rubin)**

158. Ms. Kyle realleges and incorporates herein by reference all the allegations set forth in this complaint.

159. The officers violated Ms. Kyle's 4th Amendment rights under the U.S. Constitution by using excessive force, and falsely arresting Ms. Kyle.

160. Sgt. Bedlion unlawfully seized Ms. Kyle when he grabbed her.

161. Sgt. Bedlion used excessive force by seizing Ms. Kyle and throwing her into a barbeque pit.

162. No reasonable officer under the circumstances would have used the amount of force Sgt. Bedlion used against Ms. Kyle.

163. Sgt. Bedlion caused Ms. Kyle to be arrested by ordering Officer Davis to arrest her.

164. Sgt. Bedlion did not have probable cause to believe Ms. Kyle had committed a crime.

165.     The other defendants knew that Sgt. Bedlion lacked probable cause to have Ms. Kyle arrested but arrested her anyway, or allowed her to be arrested for the purposes of revenge and to cover up their own wrongdoing in injuring Ms. Kyle.

166. To the extent that any officer named in this complaint did not individually commit each act alleged in this cause of action, the officers are liable under civil conspiracy for the acts alleged herein.

## SEVENTH CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 1983

## (FIFTH AMENDMENT)

## (Defendant: Sgt. Bedlion)

167.     Ms. Kyle realleges and incorporates herein by reference all the allegations set forth in this complaint.

168.     If Sgt. Bedlion's action in throwing Ms. Kyle into a hot barbeque is not cognizable under the Fourth Amendment because he did not apply means intended to interfere with Ms. Kyle's freedom of movement, but was instead engaged in a police pursuit of Darious Lewis, Sgt. Bedlion is alternatively liable for violating Ms. Kyle's due process rights under the Fifth Amendment.

## EIGHTH CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 1983 (FIRST

## AMENDMENT)

## (Defendant: Sgt. Bedlion)

169.     Ms. Kyle realleges and incorporates herein by reference all the allegations set forth in this complaint.

170.     Darious Lewis engaged in constitutionally protected speech by criticizing, however crudely, Sgt. Bedlion's performance of his duties as a public official.

171.     Sgt. Bedlion engaged in retaliatory action against Ms. Kyle, specifically the use of excessive force against her, in response to her boyfriend, Darious Lewis, calling him a "cracker."

172.     The use of excessive force against an individual's girlfriend, of the magnitude used against Ms. Kyle, would deter a person of ordinary firmness from exercising his First Amendment rights.

173.     Darious Lewis is hindered from bringing a claim to vindicate his own First Amendment interests because of a lack of compensable damages.

174.     Sgt. Bedlion used excessive force by seizing Ms. Kyle and throwing her into a barbeque pit.

175.     No reasonable officer under the circumstances would have used the amount of force Sgt. Bedlion used against Ms. Kyle.

176.     Sgt. Bedlion caused Ms. Kyle to be arrested by ordering Officer Davis to arrest her.

177.     Sgt. Bedlion did not have probable cause to believe Ms. Kyle had committed a crime.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray as follows:

1.  Declare Defendants' conduct to be unlawful;

2.  Award Ms. Kyle compensatory and punitive damages in an amount to be
    determined at trial;

3.  Grant Ms. Kyle an award of attorney fees and other litigation costs reasonably
    incurred in this action;

4.  Grant Ms. Kyle such other and further relief which the Court deems proper.

**JURY TRIAL DEMANDED**

Respectfully Submitted,

___/s/_____

Daniel Hornal
Talos Law
D.C Bar #1005381
705 4th St. NW #403
Washington, DC 20001
(202) 709-9662

Attorney for Plaintiff

_____/s/ Jeffrey L. Light_____

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213

Attorney for Plaintiff