UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHALONYA KYLE, | ) | |
| | ) | |
| PLAINTIFF | ) | Civil Action No. 1:12-cv-1572 (RMC) |
| vs. | ) | |
| | ) | |
| SGT. DUNCAN BEDLION, *et al.*, | ) | |
| | ) | |
| DEFENDANTS | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THE COMPLAINT

In this civil rights case, Plaintiff Shalonya Kyle brings suit against several Metropolitan Police Department employees who used excessive force against her and then falsely arrested her to cover up their wrongdoing.  Defendants have filed a partial motion to dismiss which Plaintiff, through this memorandum, respectfully opposes.

The case arises out of an incident during which Defendant Sgt. Bedlion got mad at Ms. Kyle's boyfriend and pepper sprayed Ms. Kyle and her boyfriend in retaliation. When attempting to arrest Ms. Kyle's boyfriend, Sgt. Bedlion threw Ms. Kyle into a barbeque that was extremely hot, causing her to become seriously burned. To cover up his own wrongdoing, Sgt. Bedlion ordered Defendant Ofc. Davis to arrest Ms. Kyle. She was then transported to a police station rather than a hospital despite having obvious wounds, and made to sit there for over four hours. The defendant officers then conspired to fabricate a justification for Ms. Kyle's arrest, and lied in police reports about what happened, accusing Ms. Kyle of assaulting them, when she did no such thing, and they

knew she did no such thing. The officers caused Ms. Kyle to be charged with assault on a police officer, a charge for which she was acquitted.

## I.      COUNTERSTATEMENT OF THE FACTS

Ms. Kyle was at a party at approximately 9pm on Sept. 11, 2011 at 1818 L St. NE, Washington, DC, when several police officers showed up in response to a noise complaint.  (FAC[1] ¶ 25.)  Ms. Kyle did not have any alcohol to drink that night.  (FAC ¶ 26.)

Defendant Sgt. Bedlion got into an argument with Ms. Kyle's boyfriend, Darious Lewis.  (FAC ¶ 29.)  Ms. Kyle was attempting to get Mr. Lewis to be more cooperative with the officers, to the point of putting her hand over his mouth in an attempt to prevent him from saying aggressive things. (FAC ¶ X.)

Sgt. Bedlion grew very angry when Mr. Lewis called Sgt. Bedlion a "motherfucking cracker."  In response to this insult, Sgt. Bedlion lost his temper and pepper sprayed both Mr. Lewis and Ms. Kyle.  (FAC ¶¶ 34-35.)  Recoiling in pain from the OC spray, Ms. Kyle and Mr. Lewis began to tumble down the steps of the porch.  (FAC ¶ 41.)  Sgt. Bedlion grabbed Ms. Kyle from the rear and threw her into a barbeque which was extremely hot, burning and injuring her.  (FAC ¶¶ 43-45.)  Sgt. Bedlion and Ofc. Gamm then placed Mr. Lewis under arrest.

Ofc. Davis, who had been running criminal background checks on the residents for the past several minutes, returned to the scene and helped Ms. Kyle to her feet and began to escort her inside the house.  (FAC ¶ 47.)  Sgt. Bedlion told Ofc. Davis not to bring Ms.

---

[1] FAC refers to the First Amended Complaint.

Kyle into the house, but rather to place her under arrest. Ofc. Davis then placed Ms. Kyle

under arrest.  (FAC ¶¶ 48-49.)

Ms. Kyle was then brought to the Fifth District police station at the instructions of

Defendant Lt. Ronald Wright, despite a large, bleeding, serious burn on her arm, and

despite suffering from the effects of OC spray.  (FAC ¶¶ 52-53.)  Ms. Kyle was forced to

wait outside the police station for approximately thirty minutes, and was then booked and

placed in a cell. She was not brought to a hospital to treat her wounds until approximately

4 hours after Ofc. Bedlion unjustifiably OC sprayed her and threw her against a hot

barbeque.  (FAC  ¶¶ 55-58.)

Following this incident, Defendants Bedlion, Gamm, Rubin and Davis repeatedly lied

in police reports and other filings about what occurred, causing Ms. Kyle to be charged

with assault on a police officer.  (FAC ¶¶ 59-95.)  Ms. Kyle was acquitted at trial.  (FAC

¶ 89.)


II.      STANDARD OF ADJUDICATION

A.  Motion to dismiss under 12(b)(6)

A complaint need only provide "a short and plain statement of the claim showing that

the pleader is entitled to relief" in order to survive a motion to dismiss. Fed. R. Civ. P.

Rule 8(a)(2). "A complaint must give the defendants notice of the claims and the grounds

upon which they rest, but specific facts are not necessary."  *Atherton v. D.C. Office of the*

*Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).

When ruling on a motion to dismiss, the court "must accept as true all of the factual

allegations contained in the complaint." *Id.*  A court "may not grant a motion to dismiss

for failure to state a claim even if it strikes a savvy judge that recovery is very remote and unlikely." *Id.*  So long as "the pleadings suggest a plausible scenario to show that the pleader is entitled to relief, a court may not dismiss." *Id.*

### B.  Qualified immunity

In resolving questions of qualified immunity, courts engage in a two-part inquiry. The first "threshold question" is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   If the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case." *Id.*  It is no longer required that a court resolve a qualified immunity claim by answering the questions in that particular order.  *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

### III.   ARGUMENT

### A.   **Ms. Kyle has sufficiently pled a claim for negligence.**

#### i.   Negligence based on the filing of a false police report

Sgt. Bedlion and Officers Davis, Gamm, and Rubin argue that Plaintiff's claims for negligence against them are barred by the public duty doctrine because "[w]riting factually accurate reports is not a duty that is owed to plaintiff." (Def. Mem. at 9.)  The public duty doctrine, however, is simply inapplicable in cases such as this where the government agents affirmatively caused the harm.  *McGaughey v. District of Columbia*, 734 F. Supp. 2d 14, 18 (D.D.C. 2010)("[W]here the government is affirmatively

responsible for injury through ordinary negligence resulting from the use of its police powers, the public duty doctrine will not apply.")  As the D.C. Court of Appeals has explained, the public duty doctrine "deals with the question whether public officials have a duty to protect individual members of the general public against harm from *third parties* or other *independent* sources." *District of Columbia v. Evans*, 644 A.2d 1008, 1017 n.8 (D.C. 1994)(emphasis added).  The doctrine is thus "wholly inapposite in a case such as this, where the alleged harm was brought about directly by the officers themselves, and where there is no allegation of a failure to protect."  *Liser v. Smith*, 254 F. Supp. 2d 89, 102 (D.D.C. 2003)(rejecting application of public duty doctrine to negligent arrest scenario).

Next, the defendants contend that Ms. Kyle cannot state a claim for negligence arising out of the making of false reports because "swearing false reports is inherently an intentional act." (Def. Mem. at 9.)  Defendants offer no legal authority for the proposition that the making of false reports is inherently an intentional act, and courts that have considered the question have come to the opposite conclusion.  *See e.g., Wallace v. Masterson*, 345 F. Supp. 2d 917, 922-23 (N.D. Ill. 2004)("Plaintiff has stated a claim for negligence against Masterson . . . . [A]llegations that Masterson 'made representations' of Plaintiff's battery in the police report . . . could have resulted from Masterson's negligent reporting of the events.")  Here, Ms. Kyle has alleged negligence in the reporting of events arising from the defendants' failure to take steps to ensure the veracity of the statements they were making.

Common sense and the precedent in this jurisdiction hold that, contrary to the defendants' assertion, there is such a thing as the negligent making of false statements.

*See Wachovia Bank & Trust Co., N. A. v. National Student Marketing Corp.*, 650 F.2d 342, 355-56 (D.C. Cir. 1980)(noting that civil liability for filing a false statement under 15 U.S.C. § 77k(a) is permitted even for "negligent misstatements"); *Hall v. Ford Enterprises, Ltd.*, 445 A.2d 610, 612 (D.C. 1982)(negligent communication of false information is a required element of cause of action for negligent misrepresentation); *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 792 (D.C. 2011)(*en banc*)(falsely informing individual that he was HIV-positive gave rise to cause of action for negligent infliction of emotional distress); *Rosen v. Am. Isr. Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012)(claim for defamation may be supported by defendant's negligent statement).

ii.   Negligence based on the failure to investigate Ms. Kyle's injuries

The defendants' sole challenge to the negligence count relating to Lt. Wright's failure to investigate Ms. Kyle's injuries is that Lt. Wright did not owe a duty to investigate her injuries.  (Def. Mem. at 10)("The facts do not support plaintiff's conclusion that Lt. Wright knew nor [sic] had a duty to investigate if Ms. Lewis [sic: Ms. Kyle] had injuries from the OC spray and her being thrown to the ground.")  Although there may not be a general duty to assist fellow citizens, once an individual is placed under arrest, a special relationship is created wherein the arrestee must rely on the police for medical care because the arrestee is not free to leave to ensure his or her own health needs are met.  Lt. Wright owed a duty to Ms. Kyle to ensure that she received timely medical care.

iii.   Negligence based on the use of force against Ms. Kyle

The D.C. Court of Appeals has explained that while it is not possible to negligently commit an intentional act, plaintiffs may plead and prove alternative theories of liability relating to a single incident of excessive use of force.  *Sabir v. District of Columbia*, 755 A.2d 449, 452 (D.C. 2000).  Ms. Kyle has satisfied the requirements for pleading negligence because she has pled it as a separate basis for liability based on alternative factual scenarios.  Rawlings v. District of Columbia, 820 F. Supp. 2d 92, 108-09 (D.D.C. 2011).  Specifically, Ms. Kyle has pled that if she was not intentionally thrown into the barbeque pit, she was negligently knocked into the pit while the defendants were effecting the arrest of Mr. Lewis.  Further, Ms. Kyle has pled that if OC spray was not intentionally used against her, the defendants were negligent in using OC spray against Mr. Lewis in such a way that it injured her as a bystander.

## B.  Ms. Kyle has sufficiently pled a claim for abuse of process.

Defendants correctly state that abuse of process occurs when "[p]rocess has been used to accomplish some end which is without the regular purview of the process." *See Hall v. Field Enterprises, Inc.*, 94 A.2d 479, 481 (D.C. 1953) ("an abuse of process arises when there has been a perversion of court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do.")  Defendants note that malicious motive, standing alone, is insufficient to establish abuse of process. This is a correct statement of law. However, it is a red herring because Ms. Kyle alleges more than a malicious motive.

Ms. Kyle alleges that defendants prosecuted her for the purpose of covering up their own wrongdoing, for the purpose of intimidating her into not filing charges, and in an attempt to make it seem like Sgt. Bedlion was justified in his use of force.  (FAC ¶¶ 139-144.)  These purposes for bringing litigation are precisely the "perversion of the judicial process and [attempted] achievement of some end not contemplated in the regular prosecution of the charge," *Scott v. Dist. of Columbia*, 101 F.3d 748, 755, 322 U.S. App. D.C. 75 (D.C. Cir. 1996), which is the basis for the tort.  Because Ms. Kyle has alleged ulterior motive, Defendants legal conclusions about malice miss the mark.

Defendants assert that the instant case is identical to *Scott*. In *Scott*, the plaintiff alleged that police arrested him for DUI for the purpose of covering up their use of excessive force. *Id.* at 755. In *Scott*, the court held that the officers had probable cause to arrest the plaintiff for the crime of which he was accused. The plaintiff had collided with several parked cars, and was acting "erratic and belligerent." *Id.* at 751. "The sergeants had ample probable cause to believe that Scott was guilty of DUI." *Id.* at 755, and prosecuted him for the purpose of punishing him for a crime they believed he had committed. In *Scott*, any advantage that the officers expected to obtain from the arrest was merely incidental. *See id.* at 755-56.

*Scott* is inapposite because in the case at bar, the officers did not have probable cause to arrest Ms. Kyle.  Furthermore, they did not prosecute her for the purpose of establishing that she was guilty of a criminal offense.  Rather, they prosecuted her to cover up their own wrongdoing, for intimidation, and to create a post-hoc justification for Sgt. Bedlion's violence.  (FAC ¶¶ 139-44.)  The defendants in the case at bar knew that Ms. Kyle was not guilty of any offense. Rather, Defendants brought the claim for the

purpose of covering up their own wrongdoing, and for the purpose of intimidation. *Cf.*
*Scott*, 101 F.3d at 756 ("Scott does not contend that the filing of criminal charges was
intended to pressure him into taking any action or prevent him from taking action, or to
achieve any other collateral purpose.")

This Court ruled last year that *Scott* is not applicable when a plaintiff alleges
intimidation as a collateral purpose. *Hernandez v. District of Columbia*, 845 F.Supp.2d
112, 119 (D.D.C. 2012).  In *Hernandez*, the court held that when Plaintiff alleged that a
police officer "used criminal process against [plaintiff] in order to intimidate [plaintiff]
from asserting his rights against the Defendants and in order to cover up the wrongdoing
of Defendant and to avoid civil and criminal liability for Defendant's acts," the plaintiff
stated a claim for abuse of process.  *Hernandez* explicitly distinguished *Scott* on the
grounds that the Scott plaintiff did not allege that the process was used to achieve a
collateral purpose. *Id.* at 118. Ms. Kyle's allegations are the same as those of the plaintiff
in *Hernandez*.

Because Plaintiff has adequately alleged an impermissible collateral purpose for
the prosecution, Plaintiff states a claim for abuse of process.

### C.  **Ms. Kyle has sufficiently pled a claim for defamation.**

Assuming the falsity of the statements in the police report, they are clearly
defamatory and constitute libel *per se* because they accuse Ms. Kyle of committing the
offense of Assault on a Police Officer.  *See Johnson v. Johnson Publishing Co.*, 271 A.2d
696, 698 (D.C. 1970) ("to accuse one of a crime is libel *per se*.")  Defendants do not
contend otherwise, arguing instead that they are entitled to immunity under the "fair
reporting privilege."  (Def. Mot. at 13.)  However, the fair reporting privilege, which is

"an exception to the common law rule that one who repeats or republishes a defamation uttered by another adopts it as his own," *Dameron v. Wash. Magazine, Inc.*, 779 F.2d 736, 739, 250 U.S. App. D.C. 346 (D.C. Cir. 1985),  is inapplicable to this case.  The defendants are not alleged to have repeated or republished a defamation uttered by another, but rather are alleged to have been the original utterers.  Further, the conditional privilege only applies to reports which are "accurate and complete, or a fair abridgement of what has occurred, and (b) published for the purpose of informing the public as to a matter of public concern."  *Oparaugo v. Watts*, 884 A.2d 63, 81 (D.C. 2005) (*quoting Phillips v. Evening Star Newspaper Co.*, 424 A.2d 78, 88 (D.C. 1980), *cert. denied*, 451 U.S. 989 (1981)).  The police reports are neither "accurate and complete" nor "a fair abridgement of what has occurred. " (FAC ¶¶ 7, 135, 139, 150-52.)  Further, the reports were not published to inform the public about a matter of public concern, but rather, as the defendants point out, were prepared for the criminal prosecution of Ms. Kyle.  (Def. Mot. at 13.)

Even if the fair reporting privilege did apply here, however, the privilege is qualified and can be defeated by a showing of malice.  *See Oparaugo*, 884 A.2d at 81.  Plaintiff has alleged that the defendants acted with malice, (FAC ¶ 155) a state of mind which may be pled generally under Fed. R. Civ. Pro. Rule 9(b)("Malice . . . may be alleged generally.")  *See Creecy v. District of Columbia*, 2011 U.S. Dist. LEXIS 34498, at *20 (D.D.C. Mar. 31, 2011)(Plaintiff sufficiently pled malice where he "explicitly alleges in his Complaint that Defendants Jackson and Walker prosecuted him with ill will and malice . . . and a reasonable factfinder could infer the existence of malice from the officers' alleged disregard for the explanations offered by Peaches and Creecy at the

scene and their alleged mistreatment of Creecy during and after his arrest.")  Here, a reasonable factfinder could infer malice from the use of excessive force against Ms. Kyle, the fabrication of charges against her, the blatant misrepresentations in the police report, the refusal to provide her with prompt medical attention, the disregard of her version of events, and the failure to note her burns in the arrestee injury report, among other things. Accordingly, the First Amended Complaint has sufficiently pled a claim for defamation and the defendants' motion to dismiss this count should be denied.

### D.  **Officers Davis, Gamm, and Rubin are not entitled to qualified immunity with respect to Count VI.**

> There are two ways in which [a] plaintiff may establish an unlawful arrest claim [under § 1983]. First, plaintiff can show that [the] Officer ... was directly involved in the arrest without probable cause, and therefore is liable for the constitutional violation. Alternatively, plaintiff can establish that [the] Officer ... is liable under a theory of bystander liability. Under the bystander theory of liability an officer is held responsible for a constitutional violation if he: (1) knows that a fellow officer is violating an individual's constitutional right; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.

*Fernandors v. Dist. of Columbia*, 382 F. Supp. 2d 63, 72 (D.D.C. 2005)

Ms. Kyle, under the test of *Fernadors*, has properly pled a violation of § 1983 against defendants Davis, Gamm and Rubin. Defendant Davis arrested Ms. Kyle and is therefore liable under §1983.  *Id*.  (FAC ¶ 49.) The language in *Fernadors* is clear that if an officer is directly involved in an arrest without probable cause, that officer is liable under §1983. *Fernandors*, 382 F. Supp. 2d at 72. Defendants' arguments about qualified immunity therefore must fail, as the right is clearly established.

Defendants Davis[2], Gamm and Rubin all swore in police reports to have observed the events leading up to the arrest of Ms. Kyle. (FAC ¶¶ 69, 72-74, 84-86.)  Ms. Kyle saw Ofc. Gamm observe the events leading up to her arrest. (FAC ¶¶ 28, 42.)  Because Ms. Kyle has alleged facts from which a reasonable juror could infer that the officers were nearby, observed the violation of Ms. Kyle's rights, and could have stopped it, the *Fernandors* test is met.[3] The defendants did not act to prevent the harm, and, in fact, acted to compound the harm. (FAC ¶¶ 69-91.)

Defendants argue that *Fernandors* weighs in their favor because the court held that the officers were entitled to qualified immunity in that case because there was no evidence suggesting that the officer had made the determination to arrest the plaintiff. (Def. Mot. at 17.)  In order to make its determination, the *Fernandors* court held that there was no evidence to show that the officer "was aware of the fabrication [of the pretext for an arrest] and had an opportunity to stop the arrest." *Fernandors* at 72. Defendants noted only the first *Fernandors* test, and not the second. Plaintiffs have pled that the officers were aware that Ms. Kyle had done nothing wrong, and that the officers had an opportunity to stop the arrest but did not, so *Fernandors* weighs in Plaintiffs favor.

---

[2] It is unclear if Officer Davis actually saw the events leading up to the arrest, despite claiming in police reports to have observed the events. Officer Davis is liable for the false arrest because she arrested Ms. Kyle. But even if this court finds that she is not liable under the first *Fernadors* rationale, it should not dismiss this claim against her on a motion to dismiss, as discovery will be necessary to determine if she actually observed the events leading up to the arrest or not. In the alternative, the claim as to Defendant Davis should be dismissed without prejudice.

[3] It is irrelevant that Sgt. Bedlion outranked the other officers then at the scene. *Masel v. Barrett*, 707 F. Supp. 4, 8 (D.D.C. 1989) (while noting that the duty to prevent officers from violating the civil rights of others is highest for supervisors, it is "true for all officers.")

Similarly, in *Bennett v. Schroeder*, 99 Fed. Appx. 707, 713-14 (6th Cir. 2004), there was no evidence that the officer knew that the plaintiff's rights were violated nor was there any evidence to show that the officer could have stopped the arrest. Therefore, *Bennett* is not relevant.

Finally, in both *Fernandors* and *Bennett*, the case was before the court on a summary judgment motion. Because the case at bar comes to this court on a motion to dismiss, Ms. Kyle need not present evidence, but need only plead facts to make a claim plausible. *Atherton v. District of Columbia*, 567 F.3d 672, 681, 386 U.S. App. D.C. 144 (D.C. Cir. 2009). This she has done (FAC ¶¶ 69-91), so this cause of action must not be dismissed. *See also Wesby v. District of Columbia*, 841 F.Supp.2d 20, 38 (D.D.C. 2012) (holding that summary judgment on qualified immunity is inappropriate when there is a contested issue of fact as to the reasonableness of reliance on other officers' orders or observations.)


   **E.  Ms. Kyle has sufficiently alleged that her substantive[4] due process
        rights have been violated.**

In order to establish a substantive due process claim, a plaintiff must show that the state actor was deliberately indifferent to her constitutional rights such that the conduct shocks the conscience. *Molina-Aviles v. District of Columbia*, 824 F. Supp. 2d 4, 10 (D.D.C. 2011) (*quoting Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403, 372 U.S. App. D.C. 312 (D.C. Cir. 2006)).  Ms. Kyle's substantive due process rights

---

[4] When Ms. Kyle submitted her amended complaint, she dropped her claim for violation of her procedural due process rights. Defendants' arguments in section F of their Motion are therefore moot.

were violated in two ways. First, her rights were violated when she was attacked by the officers, before her arrest. Her rights were violated again when the officers fabricated evidence against her for use at trial.

      i.   <u>Ms. Kyle states a claim for violation of her substantive due process rights when she was abused by Sgt. Bedlion before her arrest.</u>

Defendants argue that under *Graham v. Connor*, 490 U.S. 386, 394 (1989), claims involving excessive force in the course of an arrest or investigatory stop are to be analyzed under the Fourth Amendment.  While this is true, from the facts as understood by Ms. Kyle, it is not clear that she was under arrest or being investigated for anything when she was sprayed in the face with OC spray or when she was thrown into the hot barbeque. Rather, it was Darious Lewis who was being investigated. (FAC ¶¶ 29-34.)

Fourth Amendment remedies attach only after a person has been searched or seized. It is beyond dispute that her arrest itself should be analyzed under the Fourth Amendment. However, discovery will be required to determine if Ms. Kyle was being detained, or if she was merely a bystander, when Sgt. Bedlion attacked her with OC spray and threw her into the hot barbeque.  If she was merely a bystander, her rights were violated under the Fifth amendment, not the Fourth.  Because Ms. Kyle has alleged facts consistent with both a Fifth and Fourth Amendment cause of action under § 1983, and because Plaintiffs are entitled to argue in the alternative, Count VII should not be dismissed.

    ii.  <u>Ms. Kyle's substantive due process rights were violated when the officers</u>
<u>fabricated evidence against her.</u>

"The Supreme Court has determined that one type of government conduct that violates substantive due process is the knowing use of false evidence to obtain a conviction." *Molina-Aviles*, 824 F. Supp. at 10 (*citing Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  A conviction need not actually be obtained, rather, it is a violation to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government.[5] *Id*. (*quoting Deveraux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001)). This right is more than clearly established; it is obvious on its face. *Id*. (citing cases.)

Ms. Kyle has alleged that the officers intentionally fabricated evidence against her.  (FAC ¶¶ 59-95.)  The intentional fabrication of evidence by government agents shocks the conscience and is sufficient to state a claim under §1983 for violation of substantive due process. *Id*.

Finally, while Defendants did not raise the argument of qualified immunity for their violation of Ms. Kyle's substantive due process rights, any qualified immunity defense must fail. Qualified immunity shields police from liability under § 1983 to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  "A reasonable person, however, surely would realize that 'framing' someone for a crime that [s]he did not commit

---

[5] That a conviction need not actually be obtained for a violation of the Fifth Amendment is obvious on its face. The conviction or lack thereof goes only to the question of damages, not to the question of liability. A reasonable person's conscience is shocked when an agent of the government intentionally lies in an attempt to imprison a citizen, regardless of if that agent is successful.

deprives that person of h[er] constitutional rights." *Molina-Aviles*, 824 F. Supp. at 12

(*quoting Young v. Biggers*, 938 F.2d 565 (5th Cir. 1991)).


    F.  <u>Ms. Kyle has standing to raise the First Amendment rights of Darious
Lewis.</u>

      In general, a litigant seeking to assert the rights of a third party must meet three

requirements: "The litigant must have suffered an 'injury in fact,' thus giving him or her

a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must

have a close relation to the third party; and there must exist some hindrance to the third

party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410-11

(1991)(internal citations omitted).

      In the First Amendment context, however, the prudential limitations on standing

are relaxed.  Prudential standing principles may not be applied if they would have an

inhibitory effect on freedom of speech. *United States v. Raines*, 362 U.S. 17, 22 (1960).

Thus, in addition to the *Powers* formulation which requires a litigant to demonstrate

practical obstacles which prevent the third party from asserting the rights on his own

behalf, the Supreme Court has held that a litigant may assert a third party's First

Amendment rights if the litigant has suffered an injury-in-fact and if the litigant can be

expected satisfactorily to frame the issues in the case. *Secretary of Maryland v. Joseph

H. Munson Co.*, 467 U.S. 947, 958 (1984).  *See also Reese Bros. v. United States Postal

Serv.*, 531 F. Supp. 2d 64, 68-69 (D.D.C. 2008)(even where there is no impediment to

third parties bringing their own suit, third-party standing may be available when

government action cultivates a "chilling effect" deterring a third party from exercising its

First Amendment rights).  The Court need not determine precisely how the *Munson* test differs from the *Powers* test, however, because Ms. Kyle has standing even under the stricter *Powers* test.

The first prong of *Powers* requires that the litigant must have suffered an injury in fact.  The First Amended Complaint makes clear that Ms. Kyle suffered an injury-in-fact, namely, being thrown into a barbeque pit, (FAC ¶ 174) and that her injury was the result of Sgt. Bedlion's retaliation against her for the actions of her boyfriend, Darious Lewis, in calling him a "cracker."  (FAC ¶ 171.)  Thus, Ms. Kyle has a sufficiently concrete interest in the outcome of the First Amendment issue because she may be entitled to significant money damages if she prevails on the issue.

As to the second prong, Ms. Kyle would be an effective advocate for Darious Lewis's rights because she is the person actually injured by Sgt. Bedlion's retaliatory conduct.  *See Kounitz v. Slaatten*, 901 F. Supp. 650, 655 (S.D.N.Y. 1995)(finding third-party standing where wife was fired in retaliation for her husband's First Amendment activities).

As to the third prong, there is no allegation that Darious Lewis suffered any direct injury when Sgt. Bedlion retaliated against Ms. Kyle.  Thus, not only would he lack financial incentive to bring a claim to protect his own rights, but he may not have standing to bring a claim on his own behalf at all.  *See Weaks v. FBI-MPD Safe Sts. Task Force*, 2006 U.S. Dist. LEXIS 5158, at *6 (D.D.C. Jan. 27, 2006)(boyfriend suffered no injury-in-fact when excessive force was used against his girlfriend and son); *Agostino v. Simpson*, 2008 U.S. Dist. LEXIS 93094, at *18 (S.D.N.Y. Nov. 17, 2008)(finding third *Powers* prong met because, absent allegation that father suffered direct economic harm

when the defendants allegedly retaliated against his son, the father would lack incentive

to bring a claim to protect his own rights).

### G.   <u>Sgt. Bedlion is not entitled to qualified immunity on the First<br>Amendment claim.</u>

Mr. Lewis's First Amendment right to be free from the chilling effect of excessive

force by police officers was well-established in January 2012.  *See Washington*

*Mobilization Committee v. Cullinane*, 566 F.2d 107, 127 (D.C. Cir. 1977)("excessive

force may deter peaceful and law-abiding citizens from exercising their first amendment

rights[.]")  Although retaliation is not expressly referred to in the Constitution, it is

nonetheless actionable because retaliatory actions may tend to chill an individual's

exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

In *Hartman v. Moore*, 547 U.S. 250, 256 (2006), the Supreme Court explained that

"[o]fficial reprisal for protected speech offends the Constitution because it threatens to

inhibit exercise of the protected right, and the law is settled that as a general matter the

First Amendment prohibits government officials from subjecting an individual to

retaliatory actions, including criminal prosecutions, for speaking out . . . . When the

vengeful officer is federal, he is subject to an action for damages on the authority of

*Bivens.*" (internal brackets, quotaions, and citations omitted.)  The Court held, however,

that a First Amendment retaliatory prosecution claim cannot succeed unless lack of

probable cause is also alleged and proven.  *Id.* at 252.  Thus, *Hartman* reaffirmed the

viability of a cause of action for retaliation in violation of the First Amendment, provided

the claim is properly pled and proven.

### H.  The intracorporate conspiracy doctrine is inapplicable to this case.

i.  The intracorporate conspiracy doctrine does not apply to § 1983 cases.

The Court should not apply to Plaintiff's claims under § 1983 the reasoning that the individual defendants all acted as agents of the District and therefore the District could not conspire with itself under the antitrust doctrine of intracorporate conspiracy. Many courts have held that cases involving police misconduct, like this one, are not appropriate for the intracorporate conspiracy doctrine. *McDorman v. Smith*, 2005 WL 1869683, at *5-6 (N.D. Ill. Aug. 2, 2005) (quoting *Newsome v. James*, 2000 WL 528475, at *15 (N.D. Ill. Apr. 26, 2000); *Salto v. Mercado*, 1997 WL 222874, at *1 (N.D. Ill. Apr. 24, 1997)) (intracorporate conspiracy doctrine was created to shield defendants from liability for actions involving "collaborate business decisions" and "the police misconduct alleged here does not fit that mold because conspiracy and cover-up are not the product of routine police department decision-making"  and, further, that the conduct at issue was "a classic case of conspiracy" in which a "number of officers took concerted action ... to harm a single individual"); *see also Goldhamer v. Nagode*, 2008 WL 4866603, at *8 (N.D. Ill. Aug. 4, 2008).

Although some jurisdictions have accepted the extension of this antitrust doctrine to § 1985(3), it has no applicability to the unique context of § 1983 because – with the narrow exception of circumstances involving *Monell* – the statute's reference to persons acting under color of law does not apply to municipalities, political subdivisions of a state or the state itself.  Because the District, a municipality, cannot be held liable under §

1983 absent proof of a policy, custom or practice, the intracorporate conspiracy doctrine cannot act as a bar to its employee's liability for a civil rights conspiracy.

The genesis of the intracorporate or intraenterprise conspiracy doctrine is § 1 of the Sherman Act, 15 U.S.C. § 1, which prohibits contracts, combinations and conspiracies in restraint of trade.  Section 1 of the Sherman Act is directed at concerted decisions of two or more business entities to take action "that, in a competitive world, each would take separately."  *Stathos v. Bowden*, 728 F.2d 15, 21 (1st Cir. 1984) (Breyer, J.)  Given this context, it is unsurprising that the Supreme Court has held that the Sherman Act requirement of a plurality of actors cannot be met by joint action of wholly owned subsidiaries of a single entity, unincorporated divisions of a company, or employees of a single entity acting within the scope of their employment.  *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).  This is so, because the statute is aimed at the concerted activities of independent corporate entities, i.e., antitrust conspiracies.  It would make no sense to charge a single corporate entity with conspiracy to restrain trade within itself.

Here, the District argues that the elements of a § 1983 civil rights conspiracy cannot be satisfied where all of the alleged conspirators are employees of a single entity and acting within the scope of their employment as agents of that entity.  But § 1983 is *sui generis*.  Unlike any other section of the Civil Rights Act of 1871,[6] or any claims

---

[6] The Supreme Court has recognized an unresolved circuit split concerning whether the intracorporate conspiracy doctrine, born as it was from federal antitrust laws, can appropriately be applied to violations of §1985(3) which, like the Sherman Act is targeted at curbing conspiracies.  *See Hull v. Shuck*, 501 U.S. 1261 (1991) (Justice White and Justice Marshall dissenting in the denial of certiorari) ("question . . . [of] whether the 'intracorporate conspiracy' rule, which holds that a single entity cannot conspire with each other, applies to claims brought under 42 U.S.C. § 1985(3)" is in conflict within the

under common law for that matter, § 1983 is directed at the conduct of persons taken under color of law (nearly synonymous with state action).  With the exception of the limited circumstances set forth in *Monell*, § 1983's reference to persons acting under color of law does not apply to municipalities or other political subdivisions of a state.  It is this unique restriction that conclusively forecloses any possibility of applying the intracorporate conspiracy doctrine to claims brought pursuant to 42 U.S.C. § 1983.

Insofar as applying the intracorporate conspiracy doctrine outside the antitrust context has anything to recommend it, it is because there is a certain redundancy to holding a corporation (or governmental entity) liable for the actions of its agents, representatives and employees under the doctrine of respondeat superior while at the same time sustaining a claim against each individual for conspiracy to commit the very same acts that were taken in their capacity as employees of that corporation.

This rationale, of course, does not obtain in the azygous context of § 1983 where a municipality is held accountable for the misconduct of its employees only when a plaintiff can prove that those actions were sanctioned by the municipality to the degree that it constitutes a policy, practice or custom.  Absent a policy, custom or practice, the

---

Courts of Appeals); *see also Great American Fed. Sav. & Loan Assn. v. Novotny*, 442 U.S. 366, 372 n.11 (1979) (leaving open issue of applicability of intracorporate conspiracy doctrine to Section 1985(3)).  *Compare Girard v. 94th Street and Fifth Ave. Corp.*, 530 F.2d 66 (2d Cir. 1976) (applying doctrine to § 1985(3)); *with Brever v. Rockwell International Corp.*, 40 F.3d 1119, 1127 (10th Cir. 1994) (intracorporate conspiracy doctrine "should not be construed to permit the same corporation and its employees to engage in civil rights violations"); *Stathos v. Bowden*, 728 F.2d 15, 21 (1st Cir. 1984) (Breyer, J.) (same); *Dussouy v. Gulf coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981) (same); *Novotny v. Great Am. Fed. Sav. & Loan*, 584 F.2d 1235, 1256-59 (3d Cir. 1978) (en banc) (same), *vacated on other grounds*, 442 U.S. 366 (1979).  Irrespective of whether the intracorporate conspiracy doctrine should apply to § 1985, it should not apply to §1983.

only persons liable for a conspiracy to violate a person's constitutional rights under §
1983 are the individuals who participated in the conspiracy.  Thus the application of the
intracorporate conspiracy doctrine in the context of most actions brought under § 1983,
turns logic on its head.  Its application will only serve to immunize entirely any
conspiracy to violate a person's constitutional rights.  This makes no sense.  It is not the
law.

   The extension of this borrowed doctrine to conspiracy claims brought under §
1983 would unquestionably lead to absurd results; results that would violate the very
purpose of the statute.  For example, were the doctrine to be applied in the typical police
misconduct or prisoner abuse case, no claim of conspiracy would ever lie against the
individual officers responsible for conspiring to beat an arrestee or prisoner in violation
of the Fourth or Eighth Amendments.  Yet, unlike claims under § 1985 or for common
law assault, no claim would lie against the municipality for the conduct of its conspiring
employees.

   In support of their Motion to Dismiss, Defendants have cited to two 42 U.S.C. §
1985 cases, *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000)
and *Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007).  The courts in
neither *Dickerson* nor *Tabb*, however, considered whether extending the doctrine to
Section 1983 cases was analytically or doctrinally sound.  The twin aims of Section 1983
are compensation and deterrence.  *Carey v. Piphus*, 435 U.S. 247 (1978).  If the
intracorporate conspiracy doctrine applies to claims under § 1983, then any person acting
under color of law will be granted a license to conspire to violate a person's
constitutional rights with impunity.  Needless to say, this will not deter unconstitutional

conduct.  To make matters worse, absent a claim for municipal liability under *Monell*, the application of the challenged doctrine will also preclude the victims of such conduct from obtaining compensation.  Such a result is inimical to the core purpose of § 1983.  It cannot stand.

> ii. <u>Even if the intracorporate conspiracy doctrine was generally applicable to § 1983 cases, it would not apply here because the defendants were not acting within the scope of their employment with the District when they engaged in the conspiratorial acts.</u>

"Where courts have recognized the [intracorporate conspiracy] doctrine, they have included an important caveat that is implicated here: for the doctrine to apply, the individual defendants must have been acting within the scope of their shared employment."  *Rawlings v. District of Columbia*, 820 F. Supp. 2d 92, 104 (D.D.C. 2011). Agreeing to prepare false police reports to cover up the use of excessive force (FAC ¶¶ 92-95) is not an act within the scope of the defendants' duties.  *See Kivanc v. Ramsey*, 407 F. Supp. 2d 270, 276 (D.D.C. 2006)("The Court is not persuaded that agreements to conceal assault and battery with false police reports — as plaintiff alleges in this case — could conceivably be classified as the products of routine police department decision-making.")  Thus, the conspiratorial acts engaged in by the defendants do not implicate the intracorporate conspiracy doctrine.

Dated: January 25, 2012

Respectfully submitted,

  /s/ Jeffrey Light

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com
*Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this 25th day of December, 2012, I have served a copy of the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THE COMPLAINT** on counsel for Defendants via CM/ECF.

    /s/ Jeffrey Light

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com

*Counsel for Plaintiff*

24