UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHALONYA KYLE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No.: 1: 12-cv-1572 (RMC) |
| SGT. DUNCAN BEDLION, *et al.,* | ) ) ) |
| Defendants. | ) ) |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
PARTIAL MOTION TO DISMISS**

Plaintiff Shalonya Kyle has brought various claims against individual Metropolitan Police Department ("MPD") employees—Sgt. Duncan Bedlion, Officers Davis, Gamm, Rubin, and Wright—arising out of a September 11, 2011 incident that occurred within the District of Columbia (the "District"). Defendants filed a Partial Motion to Dismiss the Complaint and plaintiff subsequently filed an Opposition to Defendants' Partial Motion to Dismiss the Complaint. Defendants, through this memorandum, file their reply..

**ARGUMENT**

**I.      Plaintiff fails to state a claim for negligence.**

Even accepting all allegations in plaintiff's Complaint as true, it is clear that her Complaint can be read to allege only *intentional* torts, such as false arrest, assault, and defamation. As a result, the Court should dismiss plaintiff's claims of negligence.

Plaintiff's Complaint contends that allegedly false statements made by individual officers constitute both defamation and negligence. (Complaint ¶¶ 130-32, 140-4). Plaintiff claims that

1

the allegedly false statements made by individual defendants in their police reports and at her criminal trial were malicious and intentional, and made for the "purpose of covering up their own wrongdoing, and for the purpose of intimidation." (Pl. Opp. at 9). At the same time, plaintiff accuses the individual defendants of negligently making these allegedly false statements. (Pl. Opp. at 5). Thus, plaintiff's Complaint impermissibly combines two conflicting theories—negligence and defamation—"into a single cause of action, in essence pleading a non-existent cause of action." *Sabir v. District of Columbia*, 755 A.2d 449, 452 (D.C. 2000). In other words, plaintiff "seek[s] to recover by 'dressing up the substance' of one claim [here defamation] in the 'garments' of another [here negligence]." *Id.* (quoting *United States Nat'l Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993)). Plaintiff's conclusory statements that the allegedly false statements made by the officers constitute negligence (Pl. Opp. at 5-6) do not constitute an alternative factual scenario in support of a negligence claim. Therefore, plaintiff's claims of negligence relating to the defendant officers' false statements should be dismissed.

Plaintiff similarly "dresses up" her assault and battery claim in the "garments" of negligence. *Id.* As detailed in Defendants Partial Motion to Dismiss, plaintiff's Complaint repeatedly characterizes Sgt. Bedlion's conduct as intentional and does not allege any additional facts about the conduct that would permit a finding of negligence. (Def. Mot. at 7).

In fact, the D.C. Court of Appeals has ruled that it is impossible, as a matter of law, to commit a "negligent" arrest or battery. In *District of Columbia v. Chinn*, 839 A.2d 701 (D.C. 2003), the plaintiff alleged that the defendant police officers pulled him out of his car and repeatedly beat him with a blunt object. The trial court allowed the plaintiff to submit both negligence and assault and battery claims to the jury. The Court of Appeals reversed the jury

verdict, ruling that the trial court had erred by allowing the plaintiff to pursue a separate and distinct cause of action for negligence.  The court explained that, "[w]here the excessive force is the product of a battery, an unwanted touching inherent in any arrest, which escalates in an unbroken manner into excessive force, the cause of action is for battery alone." *Id.* at 707.  In other words, "[t]he battery did not transmogrify into negligence by the fact that officers may have in the process mistakenly crossed the line of permissible force." *Id.* at 711; *see also Sabir*, 755 A.2d at 452 ("it is settled that a person cannot negligently commit an intentional tort."); *Maddox v. Bano*, 422 A.2d 763, 764-65 (D.C. 1980) (holding that plaintiff—who alleged that officers "carelessly and negligently" fractured his arm during an arrest—could not claim negligence, writing, "[t]he terms 'carelessly and negligently' are conclusory assertions, and without more the complaint does not raise a cognizable claim of negligence…. Moreover, the trial court was not bound by plaintiff's characterization of the action."); *District of Columbia v. Tinker*, 691 A.2d 57, 64 (D.C. 1997) (following and quoting *Maddox*, holding that plaintiff who allegedly was hit and knocked down by officers could not state a claim for negligence and thus avoid the one-year statute of limitations for intentional torts, because "excessive force is a term of art denoting an act of assault or battery by law enforcement officials committed in the course of their duties" and "nothing in the case law on excessive force even 'hints at an element of negligence, or a tort distinct from assault and battery.'").

      Plaintiff repeatedly claims that the conduct of Sgt. Bedlion and the individual officers was intentional and malicious.  Therefore, she cannot  claim that the facts suppoting her intentional tort claims also support her claim for negligence..  Because, as a matter of law, there is no such thing as a "negligent defamation" or a "negligent assault," the Court should dismiss the plaintiff's negligence claims for failure to state a claim on which relief can be granted.

**II.     The Court should dismiss Count IV because plaintiff has not sufficiently pled a claim for abuse of process.**

Both the defendants' original Partial Motion to Dismiss and plaintiff's Opposition to that Motion agree that abuse of process occurs when "[p]rocess has been used to accomplish some end which is without the regular purview of the process." *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980). The issue before the Court is whether plaintiff's factual allegations regarding abuse of process are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). Plaintiff's allegations of abuse of process in this case are merely conclusory statements and do not satisfy the test for surviving a motion to dismiss.

Courts use a two-pronged approach to analyze a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). First, while a court generally considers plaintiff's factual allegations to be true, it also may "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). That is, to survive a motion to dismiss, a plaintiff's complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* Only after a court has decided that a plaintiff has asserted such "well-pleaded factual allegations" does a court assume the veracity of those allegations and determine whether they "plausibly give rise to an entitlement of relief." *Id.*

In this case, plaintiff alleges that the officers who arrested her "did not have probable cause" for the arrest. (Pl. Opp. at 8). This allegation is a legal conclusion, not a statement of fact that the Court must accept as true. Plaintiff also alleges that the defendant officers "did not

prosecute [plaintiff] for the purpose of establishing that she was guilty of a criminal offense. Rather, they prosecuted her to cover up their own wrongdoing, for intimidation, and to create a post-hoc justification for Sgt. Bedlion's violence." (*Id.*; Complaint ¶¶ 139-44). Again, these allegations are "no more than conclusions" and "are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Therefore, plaintiff's allegations of abuse of process should not survive the defendants' Partial Motion to Dismiss.

### III. Count V fails because the defendant officers enjoy immunity for the relevant statements.

Plaintiff contends that allegedly false statements that Officers Davis, Gamm, and Rubin, and Sgt. Bedlion made in their police reports, and at plaintiff's criminal trial, constitute defamation. (Complaint ¶¶ 140-46; Pl. Opp. at 9). Because these defendants are entitled to immunity from civil liability for these statements, this Court should dismiss plaintiff's claims.

Official immunity bars a plaintiff's suit from the outset of litigation. *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13 (1976). The elements underlying official immunity are objective and a judge may ascertain them. *Moss v. Stockard*, 580 A.2d 1011, 1021 n. 18 (D.C. 1990). As a result, whether the alleged acts in question are protected by official immunity is an issue for the court that may be resolved in a motion to dismiss. *Id.*; *see also C.M. Clark Ins. Agency v. Maxwell*, 479 F.2d 1223 (D.C. Cir. 1973).

Defendants' allegedly false testimony at trial does not make defendants vulnerable to defamation claims. Police officers enjoy absolute immunity as to their trial testimony: "all witness-police officers as well as lay witnesses are absolutely immune from civil liability based on their trial testimony in judicial proceedings." *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983). Indeed, the defendant officers are entitled to testimonial immunity "no matter how egregious or perjurious that testimony was alleged to have been." *Spurlock v. Satterfield*, 167 F.3d 995, 1001

5

(6th Cir. 1999). Accordingly, the defendant officers are entitled to absolute immunity for the testimony they offered at plaintiff's criminal trial.

The defendant officers are also entitled to official immunity as to the statements they made in police reports. The court in *District of Columbia v. Thompson*, 570 A.2d 277 (D.C. 1990) prescribed a two-part inquiry for determining whether allegedly defamatory statements made by a District of Columbia official are immune from suit.[1] *See Kendrick v. Fox Television*, 659 A.2d 814, 819 (1995). Immunity is established if the official's statement "(1) falls within the 'outer perimeter' of the official's duties, and (2) involves 'discretionary' rather than 'ministerial' activity. *Id.* (*citing Thompson*, 570 A.2d at 294-95).

With regard to the first prong of this inquiry, actions which "have more or less connection with the general matters committed by law [to the official's] control or supervision" are considered to be within the "outer perimeters" of the official's duties. *Moss v. Stockard*, 580 A.2d 1011, 1020 (D.C. 1993). One of the many duties of the members of the MPD is to draft police reports. In this case, the statements made by the officers in their police reports were part of their official duties as officers of the Metropolitan Police Department.

The second part of the immunity test—that the challenged action is discretionary, not ministerial—calls for a court to weigh "society's concern to shield the particular government function at issue from the disruptive effects of civil litigation" against "the vindication of private injuries otherwise compensable at law." *Moss*, 580 A.2d at 1021. The *Thompson* court identified four factors relevant to this inquiry: "(1) the nature of the injury, (2) the availability of

---

[1] Although the court reheard *Thompson* and determined that provision of the Comprehensive Merits Personnel Act preempted the plaintiff's common law remedies for defamation, among other claims, the *Thompson* court's immunity analysis continues to be the law of this jurisdiction. *See See Kendrick v. Fox Television*, 659 A.2d 814, n. 8 (1995).

6

alternate remedies, (3) the ability of courts to judge fault without unduly invading the executive's function, and (4) the importance of protecting particular kinds of acts." *Id.*

In the case at hand, a balancing of these four factors weighs heavily in favor of finding the officials' statements are immune from suit.  Allowing a defamation suit against officers based on their police reports would allow a tremendous invasion of a police function, an integral part of the initiation of criminal proceedings.  Indeed, subjecting police officers to liability based on statements made in their official reports would deter officers from making detailed accurate reports and, therefore, would deter officers from fulfilling their duties.  Therefore, the statements of the defendant officers in their police reports, like the officer's testimony at plaintiff's criminal trial, cannot form the basis of a defamation claim against the police officers, and the Court should dismiss those claims.

**IV.     Officers Davis, Gamm, and Rubin are entitled to qualified immunity with respect to Count VI.**

Dismissals based on qualified immunity are especially appropriate early in the proceedings of a case.  As noted by the Supreme Court:

> Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."

*Saucier v. Katz*, 553 U.S.194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  "As a result," the Supreme Court wrote, "'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Saucier*, 533 U.S. at 201 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*).

7

Officers Davis, Gamm, and Rubin are entitled to qualified immunity with respect to Count VI of plaintiff's Complaint—violation of 42 U.S.C. § 1983—because a government official may not be held personally liable for actions that he would not reasonably have known were unconstitutional.  *Saucier,* 553 U.S. at 200 (2001).  A police officer should prevail on the qualified immunity defense even if he is mistaken in his action, if a reasonable officer could have believed that the action taken was not in violation of clearly established constitutional law. *Anderson v. Creighton*, 483 U.S. 635, 638 (l987).  As noted by Justice Scalia, "it is inevitable that law enforcement officials will, in some cases, reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." *Id.* at 641.  A police officer therefore should prevail on a claim of qualified immunity if a reasonable police officer possessing the same information could have believed that his conduct was lawful.  *District of Columbia v. Evans*, 644 A.2d l008, l0l5 (D.C. 1994).

As discussed above, to survive a motion to dismiss, plaintiff's complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft*, 129 S. Ct. at 1950.  Plaintiff insists that the defendant officers are not entitled to qualified immunity because "if an officer is directly involved in an arrest without probable cause, that officer is liable under § 1983."  (Pl. Opp. at 11).  Plaintiff attempts to support this claim by stating that "the officers were aware that Ms. Kyle had done nothing wrong, and that the officers had an opportunity to stop the arrest but did not."  These allegations are no more than conclusions and Officers Davis, Gamm, and Rubin are entitled to immunity on these claims.

**V.        Plaintiff's substantive due process claim fails because officers have absolute immunity as to their testimony at trial and official immunity as to statements in police reports.**

Plaintiff bases her substantive due process claims against Officers Davis, Gamm, and Rubin on allegations that the officers "intentionally fabricated evidence against her." (Pl. Opp. at 15). Specifically, in her Complaint, plaintiff alleges that these officers made false statements in their police reports and also made false statements in their testimony at plaintiff's criminal trial. As discussed above, these police officers enjoy official immunity as to the statements made in their police reports and absolute immunity as to the testimony they offered at plaintiff's criminal trial.

### VI. The intracorporate conspiracy doctrine requires dismissal of all claims that the officers conspired to violate plaintiff's rights.

Plaintiff's claim that the intracorporate conspiracy doctrine does not apply to this case is incorrect. (Pl. Opp. at 19). The intracorporate conspiracy doctrine provides that, as a matter of law, a corporation cannot conspire with its own employees or agents to deny federal civil rights. *Hamilton v. District of Columbia*, 720 F. Supp. 2d 102, 109 (D.D.C. 2010). That is, a corporation and its agents and employees constitute one single entity, incapable of entering into a conspiracy with itself. *Gladden v. Barry*, 558 F. Supp. 676, 679 (D.D.C. 1983).

The District of Columbia is a municipal corporation. As a matter of law, the "District of Columbia and its officials . . . constitute a single entity." *McMillan v. Dist. of Columbia*, 466 F. Supp. 2d 219, 223 (D.D.C. 2006). "Where, as here, the complaint states a claim against a single entity—the District of Columbia—and alleges a conspiracy among the city's officials, the claim must be dismissed 'because no separate entity or individual is involved . . . with whom plaintiff can allege the District conspired to violate [her] rights.'" *Hamilton*, 720 F. Supp. 2d at 102 (citation omitted). It is an undisputed fact that, at all times relevant to these allegations, the individual defendants in this action were officials of the District of Columbia government. Therefore, these officers could not have conspired with each other to deprive plaintiff of her civil

rights. Therefore, as a matter of law, plaintiff has failed to plead a conspiracy in her Complaint and the Court should dismiss plaintiff's conspiracy claims.

WHEREFORE, for the foregoing reasons, the defendants respectfully request this Court grant their Partial Motion to Dismiss.

>Respectfully submitted,
>
>IRVIN B. NATHAN
>Attorney General for the District of Columbia
>
>GEORGE C. VALENTINE
>Deputy Attorney General, Civil Litigation Division
>
>*/s/ Jonathan H. Pittman*
>Jonathan H. Pittman [D.C. Bar No. 430388]
>Chief, Civil Litigation Division Section III
>
>/s/ Patricia B. Donkor
>PATRICIA B. DONKOR [D.C. Bar No. 1000455]
>Assistant Attorney General
>441 Fourth Street, N.W., Sixth Floor South
>Washington, DC 20001
>Phone: (202) 727-9624
>Email: patricia.donkor@dc.gov
>
>*/s/Nicole A. Raspa*
>Nicole A. Raspa [D.C. Bar No. 998694]
>Special Assistant Attorney General
>Office of the Attorney General
>441 4th Street, N.W., Sixth Floor South
>Washington, DC 20001
>Phone: (202) 724-6511
>Email: nikki.raspa@dc.gov
>
>Attorneys for the Defendants